"We, the undersigned, guarantee that Watson W. Woodburn will pay to Anthony Bencini any and all amounts of money that may come to his hands as agent for Peck, Wellford Co.
Given under our hands and seals this 15th day of October, 1836.
 JOHN A. GILMER. (Seal) (Signed) H. HUMPHREYS. (Seal) JOS. A. McLEAN. (Seal)"
(392) On the other side of the same sheet on which this was written was a letter addressed by Woodburn to Bencini, in which he proposed the terms upon which he would keep the stage house and act as stage agent for the plaintiffs at Greensborough, in Guilford County, and requested that it might be shown to Mr. Price, who was one of the firm of Peck, Wellford Co., and the whole was sealed up as a letter and sent by the stage to Mr. Bencini, at Milton, in this State.
The defendants pleaded non est factum and conditions performed and notbroken, upon which issues were joined and the case tried at Caswell, on the last circuit, before his Honor, Settle, J.
The plaintiffs having on the trial offered evidence of the execution of the instrument by the defendants and that the letter aforesaid was in the proper handwriting of Woodburn, proposed to read them to the jury, but the defendants objected: First, that the covenant created an obligation in favor of Bencini but not to the plaintiffs; secondly, that the letter endorsed, being in Woodburn's handwriting, could not be read against the defendants. His Honor allowed both to be read. The plaintiffs then called as a witness A. Bencini, who stated that the plaintiffs were contractors for carrying United States mail in four-horse coaches on two lines, one passing through Greensborough and the other ending there, for four years from and after 1 January, 1835; that he was their agent in superintending said line, and had received the obligation declared on in the letter aforesaid a few days after it bears date; that in consequence thereof Woodburn, who was the keeper of a tavern in Greensborough, was allowed to keep the stage house at that place and to *Page 313 
receive money for their fare from passengers travelling on either of the routes before mentioned. That the transfer of the stage to Woodburn's house took place on 1 January, 1837; that Woodburn settled with him, Bencini, as agent of the plaintiffs, at the expiration of the first quarter of that year, ending 1 April, and paid over to him the balance then due. He further stated that in the usual course of business on those stage lines way-bills were sent by each stage, in which were inserted the names of the passengers, the amounts paid by each, and to whom (393) paid, entered by the particular person receiving the money and attested by his signature; that Woodburn continued to be a receiver for the plaintiffs until September, 1837, when he died, reported to be wholly insolvent, and that there had been no executor or administrator of his estate; that there had been no settlement or payment by him to witness after 1 April aforesaid. The plaintiffs then offered in evidence the waybills, on proving Woodburn's handwriting of the entries charging himself with the receipt of moneys. This evidence was objected to by the defendants, but admitted by the court. The defendants all resided in Greensborough, where Woodburn lived, and the plaintiffs, one of whom lived in Caswell County and the others in Virginia, showed a formal demand made on each of the defendants in writing on 6 April, 1838, before this suit was instituted, and refusal by them.
The defendants in cross-examining the witness Bencini, inquired whether he had not heard Wellford, one of the plaintiffs, say that he had sold his interest in the mail contracts aforesaid to one Crusenberry? The plaintiffs objected that such sale could be made only in writing and with the approbation of the Postmaster General, and that parol declarations were not admissible to prove the transfer. His Honor admitted the evidence and the witness stated that he had been told by Wellford that he had made a sale of his interest aforesaid to Crusenberry on certain conditions, in the summer of 1836, but that Crusenberry failed to comply, and he sold to Price, one of the plaintiffs. It was insisted by the defendants that if Wellford had transferred his interest he was improperly joined in the action; that the plaintiffs had been guilty of laches, which would prevent a recovery by failing to notify the defendants that they accepted the covenant aforesaid — by failing to settle with Woodburn during his life — by failing to take any steps against his estate after his death, and by failing to demand payment from the defendants until the April following; and that what was due diligence was a question of law. His Honor instructed the jury that the instrument declared on was not negotiable, and that if Wellford had assigned his interest in the stage concern so as to transfer it in equity, he was still a proper and necessary party to an action at law on the instrument. That it was necessary for the plaintiff to show that the defendants had (394) *Page 314 
notice that their covenant of guaranty was accepted by them, and the jury were to inquire from the evidence in the cause whether the defendants had such notice. That it was also incumbent on the plaintiffs to prove that they had used due diligence, and that what was due diligence was partly a matter of law and partly a matter of fact. That if the account of Woodburn against the plaintiffs for the keeping of horses, etc., in the second quarter of the year ending 1 July, was equal to the amount of his receipts for them during that period, then there was no want of diligence in not calling on him to account during his life; that in general a guarantor had a right to notice from the guarantee of the default of the principal; but if they were satisfied that Woodburn died insolvent and that there had been no executor or administrator of his estate, nor property which could be subjected to the plaintiffs' claim, then no demand on them earlier than that shown in this case was necessary to enable the plaintiffs to recover. A verdict was returned for the plaintiffs, upon which a judgment was rendered and the defendants appealed.
The two first objections taken by the defendants on the trial have not been pressed upon the Court in the argument here, but as they appear upon the record they must be noticed, and may, with propriety, be considered together. The covenant declared upon does not in terms express with whom it is made. It is a "guaranty" under the seals of the defendants "that Woodburn will pay to Bencini all such sums of money as shall come to his hands as the agent of Peck, Wellford Co.", and it was transmitted by mail on the day it bears date by Woodburn to Bencini, with an indorsation in Woodburn's handwriting that it should be shown to Price, one of the firm of Peck, Wellford Co. It was objected by the defendants that upon the covenant itself it appeared to have been made with Bencini, and that the indorsation being the act of Woodburn alone could not be received in evidence to alter the (395) effect of the covenant. It is not to be questioned but that the action upon this contract must be brought by the party with whom it was made, because in him is vested the legal interest in the contract. But the instrument does not in express terms declare with whom the engagement is entered into, and therefore per se must be wholly inoperative, unless we can fairly collect from the scope of the engagement therein set forth to whom the defendants became bound. We are of opinion that it does sufficiently appear upon the face of the instrument that the contract was made with Peck, Wellford Co. It is a contract of *Page 315 
guaranty for the performance of a duty on the part of Woodburn, growing out of his relation as agent to Peck, Wellford Co., and affecting the disposition of their property. Now, although a covenant expressly made with A, but declared to be for the benefit of B, vests the legal interest in A, yet where the covenantee is not expressly declared the inference of law, because the inference of reason is that the covenant is made with him or them for whose benefit it purports to have been given. The moneys to be received by Woodburn are the moneys of Peck, Wellford Co., not of Bencini, and a failure to pay them to Bencini would be their loss, not his. Woodburn is the agent of Peck, Wellford Co., not of Bencini, and they, and not he, have an interest in the fidelity of that agent. Although the moneys thus collected in the course of this agency are to be paid to Bencini, yet they are to be so paid as the moneys of Peck, Wellford Co., in discharge of a duty to them. The covenant of guaranty is therefore in legal contemplation made with them. They could release it — they have a right to enforce it. Entertaining this opinion we are relieved from the necessity of a particular consideration of the second objection, for the evidence, whether competent or not, could in no way prejudice the defendants.
The next question presented to us respects the admission in evidence of the way-bills which were offered by the plaintiffs to show the amount that had been received for them by Woodburn, while acting as their agent. These way-bills had been made out by him and transmitted at the times they bear date to the plaintiffs or their other agents, setting forth the names of the passengers going with the way-bills and the sums by them paid for their passage money respectively. The reception (396) of this evidence was opposed upon the ground that it amounted to no more than the declarations of Woodburn, and could not bind the present defendants. We are of opinion that the evidence was competent and proper. It is a well-established rule that where a person who has peculiar means of knowing a fact makes a declaration or a written entry of that fact, which is against his interest at the time, such declaration or entry is, after his death, evidence of the fact as between third persons. Warren v. Greenville, 2 Strange, 1129; Barry v. Bibbington, 4 Term Rep., 514; Higham v. Ridgway, 10 East Rep., 109; Middleton v. Milton, 10 Barn. and Cres., 317 (21 Eng. Com. Law Rep., 84). It is true that in the case of Goss v. Wattington, 3 Brad. and Bing., 132 (7 Eng. Com. Law Rep., 379) the Chief Justice, in delivering the judgment of the Court, expresses an opinion (if the reporters be correct) that receipts given by a collector for taxes to those making payment, are not to be admitted as evidence against his sureties for the faithful discharge of his duties, after the death of the collector. It is worthy of remark, however, that the point was one wholly immaterial to the *Page 316 
decision of the case, and that in Middleton v. Milton the correctness of that opinion has been very strongly denied. But there was a peculiar propriety in receiving the evidence here objected to. It was admissible within the principle sanctioned in Goss v. Wattington, Whitmarsh v. George, 8 Barn. and Cres., 556 (15 Eng. Com. Law and Rep., 295) and other cases, because it was a part of Woodburn's duty to make out and transmit these bills exhibiting his receipts on account of his principals, and they were made out and transmitted in the discharge of that duty in the regular and ordinary course of business. It was the mode of accounting and charging Woodburn which must have been contemplated by the defendants when they guaranteed his fidelity in paying what he might collect in the course of his agency.
It appears from the case stated that upon the cross-examination of the witness Bencini, he was asked by the counsel for the defendants whether he had not heard from Wellford, one of the plaintiffs, that (397) he had sold his interest in the mail contracts to one Crusenberry, and that the witness answered that he had heard Wellford say that he had sold his interest to Crusenberry upon conditions in the summer of 1836, and that those conditions not having been complied with he had sold that interest to Price, another of the plaintiffs. Thereupon the counsel for the defendants insisted that Wellford was improperly joined as a party plaintiff, but the Court instructed the jury that Wellford's interest in this covenant was not negotiable and that a sale of his interest in the mail contracts could operate as a transfer only in equity. It has been urged here that the fair inference is that the sale by Wellford to Price was made either before the covenant was executed, or before Woodburn entered upon his agency for the mail contractors, or at all events before that agency was concluded by Woodburn's death; that such sale passed the legal interest of Wellford, and that the plaintiffs could sustain no action on the guaranty, or at all events no action for the damages sustained after such sale. This Court is of opinion that no such inference can be drawn by them, or could have been legitimately drawn by the jury; first, because it is distinctly stated in the case that Woodburn acted as the agent of the plaintiffs, up to the day of his death; and secondly, because the cross-examination left it wholly uncertain when the sale to Price was made. If the sale was made before the death of Woodburn this was a fact which it was incumbent on the defendants to establish. No instruction could be asked for upon a hypothetical statement of facts, and the prima facie right of the plaintiffs to recover could not be defeated by vague conjecture. We feel it our duty, therefore, to dismiss the consideration of this objection without expressing any opinion upon it. *Page 317 
We also forbear from considering whether there was any laches on the part of the plaintiffs in not calling Woodburn more frequently to account, or in not notifying the defendants earlier of his failure to pay over the moneys by him received, and also whether the instructions given by the judge in relation to the alleged laches and the legal consequences thereof, if shown, were correct or incorrect. It does not appear that any evidence was offered showing, or tending to show, that an injury had been sustained by reason of such alleged laches. (398) Were it admitted that the defendants could set up mere delay or want of diligence in the plaintiffs as a defense at law against an express unconditional covenant — and had such laches been ever so clearly established — it could operate, at most, but to relieve the defendants to the extent of the loss thereby thrown upon them.
The result is that the defendants have not established any sufficient error upon which to reverse the judgment rendered below, and it must, therefore, be affirmed with costs.
PER CURIAM. Judgment affirmed.
Cited: Peace v. Jenkins, 32 N.C. 357; Williams v. Alexander, 50 N.C. 163;Carr v. Stanley, 52 N.C. 133; Shaffer v. Gaynor, 117 N.C. 24.