PETER McRAE, Adm'r, v. CHARLES MALLOY.

*Witness under section 590.*

1. A party to an action brought by the administrator of a deceased person to enforce a contract entered into between them, is not competent to testify, under section 590 of The Code, to a conversation had in the presence of the deceased with his agents and attorneys in relation to the execution of the contract. Though the conversation was with the attorneys, yet they were acting for the deceased, in his presence and under his direction, and the substance of the transaction was the making of the contract and personal to the deceased.

2. The agents or attorneys in such case may be examined by either party to the suit, but the disqualification of the party to the cause is not removed, as the statute makes no exception where others were present.

(*Halyburton* v. *Dobson*, 65 N. C., 88; *Morgan* v. *Bunting*, 86 N. C., 66; *Lockhart* v. *Bell*, *Ib.*, 443, cited and approved).

CIVIL ACTION tried at January Term, 1883, of RICHMOND Superior Court, before *Graves, J.*

The action is to enforce a contract executed by the defendant to the plaintiff's intestate in these words:

"For and in consideration of paying and discharging the balance due to Alexander Malloy, of whom I was guardian, I do hereby promise and agree to pay to said Alexander Malloy annually one-third of the net profits to be made at the factory of Malloy and Morgan during my life.

8th March, 1878.          C. Malloy, (Seal)."

The defendant resists the action, and alleges that the contract was obtained by the exercise of intimidation and undue influence, practiced by the defendant and his attorneys at a time when he was in distress, and without the advice and counsel of friends.

Four issues evolved from the pleadings were submitted to the jury in form, and with responses to each, as follows:

1. Was the contract sued on obtained by surprise or undue influence? Answer—Yes.

2. Did the intestate's attorney represent to the defendant that it would be difficult for him to exonerate himself from liability to his ward on account of the loss of his papers, destroyed by Sherman's army, and that it would ruin him if he did not sign the contract? And if so, was the defendant induced by this representation to execute the contract? Answer—Yes.

3. If such representations were made, were they false? Answer—Yes.

4. Did the parties agree when the contract was made that the defendant should not be held liable for any profits until the debts, liabilities and expenses of the factory had been paid; if so, was the provision omitted by mistake or inadvertence? Answer—Yes, by mistake.

To sustain the imputations of unfairness and undue influence used in procuring the execution of the contract and the representations attending the transaction, the defendant, examined on his own behalf, was permitted, after objection made and overruled and a cautionary direction from the court not to speak of any transaction or conversation had with the deceased, to testify and say:

## McRae v. Malloy.

"I went to the house of the intestate on Monday morning, the day on which the contract was signed, and found there two attorneys of the intestate. I refused to sign one of the papers drawn and presented to me. My remark was addressed to the crowd. The first deed was read to me by one of the attorneys, who said that $38,000 was a large amount, and that it would ruin me, and I had better settle. I replied that I had been advised that I was not liable for the casualties of war. The same attorney replied, that is true, but it has been a long time since, and it would be hard to show."

"The attorney then handed me this paper (the contract sued on). I declined to sign it because the factory was in debt, and the attorney remarked, 'I can obviate that difficulty by inserting the word 'net'—and he added, 'there could be no net profits until the debts were paid.' I knew nothing of this matter before—was excited and disturbed. Morgan came in before the last paper was signed. The deed conveyed all the land I owned, except a life estate was reserved to myself. I was induced to sign the contract by representations that there could be no net profits until the debts were discharged. I was guardian to Alexander Malloy (the intestate), and became such about 1848. My guardian papers were destroyed—notes and accounts were good."

We reproduce so much of the testimony delivered by the defendant as shows the general nature and bearing of the conversation which took place in the presence of the intestate and was carried on between his counsel and the witness, and which resulted in the giving of the deed and the contract, in order that its competency may be determined.

After the rendition of the verdict, the court being of opinion that the testimony of the defendant came within the inhibiting proviso of section 343 C. C. P., and ought not to have been heard, for this and other specified erroneous rulings during the trial, set aside the verdict and awarded a new trial, and therefrom the defendant appeals. Section 299.

McRAE v MALLOY.

Messrs. *J. D. Shaw*, *T. A. McNeill* and *Frank J. McNeill*, for plaintiff.

Messrs. *J. T. Legrand* and *Burwell, Walker & Tillett*, for defendant.

SMITH, C. J., after stating the above.  The question before us and the only one we find it necessary to consider and decide, is this :

Can the living party, in an action brought by the personal representative of a deceased person to enforce a contract entered into between them, testify to conversations had in the presence of the deceased with his agents or attorneys preliminary and conducive to the making of the contract, the agents or attorneys being still alive ?

The act improving the law of evidence confers a capacity, not possessed before, upon the parties to a suit, the right to testify on their own behalf; thus removing the disqualification of interest, but with the restriction that if it relates to a personal transaction or communication, and one of the parties be dead, and the action be by or against his personal representative, the other who survives shall not be permitted to testify.  The enactment with its proviso, introducing a great change in the law of evidence, assumes that when both are alive and can give their respective versions of the matter, it may be safely left to the jury to hear each and weigh and pass upon the testimony. But where one is dead, and incapable of contradicting the other, the temptation to swerve from the truth and make false statements is too strong in the living to allow him to be heard by the jury.  In other words, the rule of disqualification, existing before, was not relaxed in such case, and where one of the persons is silent in death, the lips of the other are closed by law.

The act makes no exception where others were present, but leaves these witnesses to be called by either, and their testimony to come before the jury and be considered by itself, its credit unaffected by the testimony of the interested party.  In such

case the living party is not without the means of proving the transaction or communication, and the need of his evidence is less cogent and pressing. But whatever considerations may be urged for an interpretation that does not, under such circumstances, exclude the living witness and forbid his giving testimony, it is the plain mandate of the act that it shall not be received, and we are not at liberty to interpolate in it exceptions not placed there by the legislature that made the enactment. The court must construe and enforce it according to its terms.

But admitting this to be so, the argument for the defendant is that the transaction or communication was not with the deceased, but with his counsel, who could correct any misrepresentations of what occurred, and the case is not embraced in the disabling proviso.

This is a misconception of the nature and character of what transpired on the occasion.

The attorneys were acting for him, in his presence and with his constant and direct sanction in what was said and done, conducive to the end of bringing about the execution of the deed conveying the defendant's land to the deceased, and the entering into the contract now in suit. These were the means and agencies used to influence and bring about the result to which they were directed. The substance of the *transaction* was the making of these instruments, and this was personal to the deceased, who takes the full benefit of what was thus accomplished.

Without prolonging the discussion, we are content to refer to the case of *Halyburton* v. *Dobson*, 65 N. C., 88, the facts in which are very similar, as a decisive and direct authority upon the point. It is unnecessary to recite them as they are set out in the opinion, and we only add that the ruling of the court below was in favor of the reception of the evidence. This was reversed on appeal, and READE, J., delivering the opinion, says: "His Honor held, properly, that the defendant could not testify as to what passed between himself and the testator, Harshaw. But His Honor permitted him to testify as to what passed between

said Harshaw and Pearson, both of whom were dead at the time of his examination. This was doubtless upon the idea that the defendant was not a party to the conversation, that is, it was not between himself and them. In that was His Honor's error. The case states that the defendant and Harshaw, by agreement, went to Pearson to advise with him about the matter in dispute; that they were all together, but Harshaw and Pearson carried on the conversation, and Pearson gave his advice and Harshaw acted upon it. It is striking in the dark (sticking in the bark was, we presume, intended) to say that this transaction was not between the defendant and Harshaw. It was a transaction between them, and the defendant ought not to have been allowed to speak of it."

It is true that Pearson had also died, but no stress is laid on that circumstance in the opinion, and the testimony was not rendered incompetent by that event. A party may give evidence of a transaction between himself and an agent of the deceased; nor will the agent's death affect his competency, *Morgan* v. *Bunting*, 86 N. C., 66; *Lockhart* v. *Bell, Ib.,* 443—same case on rehearing at this term.

At the present term we have decided that the statute does not forbid a living person to speak of a transaction between himself and others jointly interested, because of the death of one or more, as long as one survives to confront the witness. *Peacock* v. *Stott, ante,* 518.

Without examining the other exceptions, we affirm the ruling of His Honor in granting a new trial for the error pointed out. This will be certified for further proceeding in the court below.

No error.                                                                    Affirmed.