SMITH v. MOORE.

(Filed October 16, 1906).

*Deeds—Fraud—Transaction with Deceased—Attorney and Client—Declarations Against Interest—Relation of Parties—Principal and Agent—Presumption of Fraud—Failure to Register Deed—Evidence—Contingent Remainders, Conveyance of.*

1. In an action by the plaintiff to set aside for fraud a deed executed by her, the testimony of the plaintiff as to what was said to her at the time of its execution by the attorney of the grantee of the deed, in the latter's presence, and as to what was done at the time, is incompetent under Rev., sec. 1631 (Code, sec. 590), the grantee being dead.

2. Where an attorney acts or speaks for his client, or an agent for his principal in their presence, the one is by the law thoroughly identified with his client and the other with his principal as much so as if the attorney or agent had not been present at all, and the client or principal had acted for himself, or the existence of the former had been merged into the latter.

3. In an action to set aside a deed for fraud because what was in fact a deed was represented to be a will, the declarations of the life-tenant, then in possession, now deceased, and made *ante litem motem*, that she had made a deed, that she executed it upon a meritorious consideration and that she acted freely and voluntarily, were competent, and this is not affected by the fact that she had only a life-estate and that the plaintiff at the time had only a contingent remainder which has since become vested.

SMITH *v.* MOORE.

4. Nor is said declaration incompetent on the ground that because the life-tenant supposed she had executed a deed, it is not evidence that the plaintiff had the same opinion as to the transaction, where the fraud charged is a misrepresentation in the presence of the life-tenant and the plaintiff, her daughter.

5. Declarations of a person, whether verbal or written, as to facts relevant to the matter of inquiry, are admissible in evidence, even as between third parties, whether it appears: (1) That the declarant is dead; (2) that the declaration was against his pecuniary or proprietary interest; (3) that he had competent knowledge of the fact declared; (4) that he had no probable motive to falsify the fact declared.

6. The declaration is admissible as an entirety, including statements therein which were not in themselves against interest, but which are integral or substantial parts of the declaration; the reason why this is so being that the portion which is trustworthy, because against interest, imparts credit to the whole declaration.

7. In an action to set aside a deed for fraud, an instruction that from the relation of the parties, the grantee being the "agent, confidential friend and adviser" of the grantor, the law raised a presumption of fraud as to any transaction between them, and the burden was upon the defendant of showing that the transaction was fair and honest, was correct.

8. In an action to set aside a deed for fraud because what was in fact a deed was represented to be a will, the fact that the grantee did not register the deed for ten months is a circumstance to be left to the jury, with the other facts, but the Court should direct their attention to the fact that the deed was registered in 1886 and has remained on the record to the bringing of this suit.

9. Where property was devised by a father in trust for the sole and separate use of his daughter for her life and after her death to such of her children as should then be living, and the trustee after the death of the husband of the life-tenant conveyed it to said life-tenant for life and remainder to her only child, a deed by the life-tenant and her child conveyed a perfect title, legal and equitable, for when the life-tenant died, the statute of uses executed the use in the child or her grantee, and her interest passed by her deed to her grantee by way of equitable assignment.

ACTION by Louisa B. Smith against Susan E. Moore and others, heard by *Judge W. R. Allen* and a jury, at the April Term, 1906, of the Superior Court of NEW HANOVER.

The object of the action is to set aside a deed for a lot in the city of Wilmington, at the northeast corner of Second

and Red Cross Streets, which was executed to Mr. Moore, the husband of the defendant, Susan E. Moore, and the father of her co-defendant, by Mrs. Mary E. Smith and her daughter, the plaintiff, and which it is alleged was obtained by fraud.

The lot was devised in 1862 by Samuel Frink, the father of Mrs. Mary E. Smith and grandfather of the plaintiff, to his son Lorenzo Frink and Henry Nutt and the survivor of them, in trust, for the sole and separate use of his daughter, Mary E. Smith, for and during her life, and at her death to such of her children as should then be living, and the issue of such as might be dead, the issue to take *per stirpes.* Mr. Nutt died in 1881, and on 27 February, 1885, Lorenzo Frink conveyed the said lot "to Mary E. Smith for life, with remainder to Louisa B. Smith in fee, reciting in the deed that the lot had been devised to Mary E. Smith for her sole and separate use, so that it would not become liable for the debts of her then husband; that the latter had since died, leaving his widow, Mary E. Smith, who was well advanced in years, and an only child, Louisa B. Smith, his other children being dead without issue surviving them. He had three children, Rebecca Smith (who was the first wife of Mr. Moore, and died in 1869, leaving one child who died in 1884), the plaintiff, and another who died without having married. Mrs. Mary E. Smith died intestate in April, 1895, and Mr. Moore died in 1900.

The plaintiff attacked the deed from her mother and herself to Mr. Moore upon the ground that, at the time it was executed, his attorney stated to her in the presence of her mother and Mr. Moore that it was a will. That she was ill at the time and confined to her bed, and that she signed the deed thinking that it was a will, and she did not know it was a deed until after Mr. Moore's death. There was evidence in corroboration of the plaintiff's testimony, consisting of statements to the same effect made afterwards by her to other persons.

It was admitted that Mr. Moore was "the agent, confidential friend and adviser of the plaintiff and her mother." It was also in evidence that the plaintiff and her mother remained in possession of the premises conveyed by the deed until the mother's death, and that after her death the plaintiff has continued in possession to the present time. The deed to Mr. Moore was executed 3 March, 1885, and registered 3 January, 1886.

The defendants introduced in evidence a paper-writing in the form of a lease from Mr. Moore to Mary E. Smith and the plaintiff, dated 15 March, 1885, by which he covenanted and agreed that they should occupy and possess the said lot "for and during the term of their joint lives, and after the death of either of them, then for the term of the natural life of the survivor of them, yielding and paying therefor annually on the 15th day of March in each and every year during the said terms one cent as rent."

The plaintiff put in evidence a letter from Mrs. Smith to Mr. Moore's attorney, dated 2 March, 1885, in which she expressed the greatest affection and esteem for her son-in-law, Mr. Moore, and referred in strong terms to his many kindnesses and to his sympathy for her, and further, to the fact that he had paid her taxes and insurance for twenty years, repaired her house, and in other ways assisted her in time of need. She states it to be her first and greatest wish, if she should outlive her child (the plaintiff), that the house and lot should "descend" to him and his children; and she evinced the greatest anxiety that he should own the lot free from any claims against her. Then she states that she gives to him all of her household furniture, books, pictures and silver to dispose of as he thinks best. The plaintiff stated that this letter was introduced to show that the attorney was not authorized to draw a deed, but a will.

The defendants put in evidence the deposition of Mrs. Boudinot, and proposed to prove by her that Mrs. Smith,

who was her sister, had stated to her that she had executed the deed to Mr. Moore, and gave substantially the same reasons for so doing as those set forth in the letter to the attorney. The testimony was excluded by the Court, and the defendants excepted. On cross-examination she testified that Mrs. Smith had told her the deed had been executed, giving in detail what was said by her about the deed. She also stated that the plaintiff had told her "that she had signed a deed and that she and her mother had fixed it all up." The defendants objected to the testimony of the plaintiff as to what was said to her by his attorney in the presence of Mr. Moore at the house, and also as to what was done at that time. The objection was overruled and the defendants again excepted. It was shown that the attorney had died before this action was commenced.

The Court charged the jury that if Mr. Moore was the agent of the plaintiff and her mother and attended to their business, and they were in the habit of relying on him for advice, this would constitute such a confidential relation between them that from it the law raised a presumption of fraud, which would be evidence of fraud to be considered by the jury, and the burden would then rest on the defendants to show that the transaction was fair and honest, and if they had failed to do so the jury should answer the issue "Yes." That this presumption was rebuttable, and if upon all the evidence the jury found that the transaction was fair and honest, they should answer the issue "No." That the letter of 2 March, 1885, did not authorize the attorney to draw a deed in fee-simple, and that the listing of the property for taxes by Mr. Moore in the name of Mrs. Smith and after her death in the name of her heirs, the failure to register the deed from 3 March, 1885, to 3 January, 1886, and the continued possession of the lot by the plaintiff, were each circumstances to be considered by the jury. The defendants objected to that part of the charge as to the non-registration of the deed.

The Court further charged that if the jury should find the facts to be those related by the plaintiff in her testimony as to what occurred at the time the deed was executed, the transaction would be fraudulent, and they should answer the issue "Yes"; but if they did not find by the greater weight of the evidence that the execution of the deed was procured by fraud, they should answer the issue "No." The jury for their verdict found that the deed was procured by fraud, and judgment having been entered thereon, the defendants appealed, and specially assigned as errors the several rulings and the instructions of the Court to which exceptions had been taken.

*John D. Bellamy & Son* and *E. K. Bryan* for the plaintiff.
*Rountree & Carr* and *Bellamy & Bellamy* for the defendants.

WALKER, J., after stating the case: The testimony of the plaintiff as to what was said and done when Mr. Moore and his attorney were at her home for the purpose of having the deed executed, was incompetent, because the witness, under the admitted circumstances of this case, was disqualified by the statute to speak of that matter, and not because the facts related were not pertinent to the inquiry. It is a principle of the common law, and one of its favorite maxims, as well as an indispensable requirement of justice, that they who are to decide shall hear both sides, giving the one an equal opportunity with the other of knowing what is urged against him and of making good his claim or defense, if he has any. This rule, so essential to the fair administration of the law, was embodied in the maxim, "No man should be condemned unheard" (*audi alteram partem*).

At common law, no party to an action or person having an interest in the event of the same was permitted to testify in his own behalf, with certain well-defined exceptions. The

Legislature, deeming this exclusion to be founded upon an insufficient reason and to be unjust in itself, changed the law in this respect and admitted interested parties as witnesses, subject to the wise provision that no such party should be allowed to testify in his own behalf against the other party representing a deceased person as to a transaction or communication between him and such deceased person. Code, secs. 589 and 590; Rev., secs. 1629 and 1631.

So we see that the ancient principle of the law, to which we have referred, has been preserved in this enactment, and one of the parties to the transaction will not be heard if the other is dead and cannot, therefore, be called in reply. "The proviso rests on the ground, not merely that the dead man cannot have a fair showing, but upon the broader and more practical ground that the other party to the action has no chance, even by the oath of a relevant witness, to reply to the oath of the party to the action, if he be allowed to testify. The principle is, unless both parties to a transaction can be heard on oath, a party to an action is not a competent witness in regard to the transaction." *McCanless v. Reynolds,* 74 N. C., 301. This construction was approved in *Pepper v. Broughton,* 80 N. C., 251, and the defendant forbidden as a witness to testify that he had not refused to speak to Lougee, his father-in-law, who was then deceased, although the plaintiff introduced testimony showing the mere declaration of Lougee that he had, and although both parties claimed under the deceased person. The idea was that the opposing testimony should be of the same kind, whereas, in fact, Pepper had only an unsworn declaration to stand against and overcome the proposed sworn testimony of Broughton. In *McRae v. Malloy,* 90 N. C., 521, the defendant proposed to show a conversation between himself and the attorneys of the plaintiff's intestate (who were then living and who were present at the time of the communication) touching a matter relevant to the controversy. The testimony was excluded and

this Court held the ruling to be correct, although the attorneys were still living at the time of the trial and could have testified and thus arrayed two witnesses in behalf of the plaintiff against only one for the defendant, and he the defendant himself and therefore vitally interested. This seemed to present a strong reason for making an exception to the rule of exclusion, but the Court adhered to the principle that the dead man could not be heard, and therefore the living one must not be. The attorneys were present and speaking and acting for their client and with his constant and direct sanction in all that was said and done, and it was the same as if he had acted personally. *"Qui facit per alium facit per se."* It will be observed that there the attorneys were living, and here the attorney is dead. The case is directly in point and decisive of this one, though this is much stronger, if anything, than that one, by reason of the fact that the attorney is dead. The law is explicit that the one party shall not testify if the other cannot, and this without reference to the presence of third parties at the time of the transaction, unless the representative is himself examined in his own behalf, or the testimony of the deceased person is introduced as to the same transaction.

If we reverse the position of the parties on the record, *Halyburton v. Dobson,* 65 N. C., 88, is a case exactly like ours. There the plaintiff's testator, Harshaw, went with the defendant to the office of the testator's attorney, Pearson, who advised him to take certain money from the defendant, and the latter proposed to show this by his own testimony, it being material to the controversy. He was held to be incompetent, though he took no part in the conversation, which was confined to Pearson and Harshaw. *Judge Pearson,* for the Court, said: "The reason for the exception is apparent. There could never be a recovery against an unscrupulous party, if he were permitted to testify where it would be impossible to contradict him. The statute ought to be con-

strued in view of this mischief." The result is that where an attorney acts or speaks for his client, or an agent for his principal in their presence, the one is by the law thoroughly identified with his client and the other with his principal, as much so as if the attorney or agent had not been present at all and the client or principal had acted for himself, or the existence of the former had been merged into the latter. We thus preserve the saving principle of the law, that the litigants must both be heard, each being given an equal chance; and equality of opportunity means that the one shall be silenced unless the other also is living and can speak. The Court erred in admitting the testimony to which the defendants objected.

This case is not like either *Peacock v. Stott,* 90 N. C., 518, or *Johnson v. Townsend,* 117 N. C., 338. There the deceased had been jointly interested with another person, who was present at the time of the transaction and who survived. *In re Peterson,* 136 N. C., 13. This is sufficient to dispose of the appeal, did we not think other questions are raised which should be considered, as, in all probability, they will again be presented, and it is well to express our views in regard to them for the guidance of the Judge who will preside at the next trial.

The second assignment of error, embracing the next six exceptions, relates to the exclusion of a part of Mrs. Boudinot's testimony, which was taken by deposition. She deposed, among other things, that Mrs. Smith, who was her sister, had told her that she had made a deed to Mr. Moore for the lot, and, in the conversation with her, used language substantially similar to that which is contained in her letter to Mr. Moore's attorney, dated 2 March, 1885. It would seem that the defendants by questions 16 and 17, and her answers thereto, on the cross-examination, had received the full benefit of her testimony as to the fact that both the plaintiff and her mother, Mrs. Smith, had admitted the execution of the

deed, or of the paper in question as a deed. But if the testimony of Mrs. Boudinot, which was excluded, is competent, it was error to reject it, and besides, all of what was said by Mrs. Smith to her sister, Mrs. Boudinot, is not included in the answers of the latter to questions asked on her cross-examination. We will, therefore, consider the competency of all that was said. The testimony was evidently ruled out by the Court because it was regarded as nothing more than hearsay; but we think it comes within one of the well-known exceptions to the rule excluding such testimony.

Declarations of a person, whether verbal or written, as to facts relevant to the matter of inquiry, are admissible in evidence, even as between third parties, where it appears:

1. That the declarant is dead. 2. That the declaration was against his pecuniary or proprietary interest. 3. That he had competent knowledge of the fact declared. 4. That he had no probable motive to falsify the fact declared. 1 Elliott on Ev., secs. 439 to 454, where the subject is fully discussed.

The declaration is admissible as an entirety, including statements therein which were not in themselves against interest, but which are integral or substantial parts of the declaration, the reason why this is so being that the portion which is trustworthy, because against interest, imparts credit to the whole declaration. It will be well to consider the origin and development of these two principles separately. The earliest case on the subject of such declarations is *Searle v. Lord Barrington,* 2 Strange, p. 826; *Lord Barrington v. Searle* (on appeal), 3 Brown's Cases, 535; *ibid.,* 8 Mod., 278. In that case, decided in 1730, an endorsement of a payment of interest on a note was admitted to repel the statute of limitations. The case was ably argued and remarkably well considered. It originated in the Court of King's Bench and was tried at Guildhall before *Lord Raymond,* then Chief Justice, who admitted the proof of pay-

ment, and afterwards it was heard in the Exchequer Chamber and the House of Lords respectively, where the ruling was sustained. It is regarded as the first and leading case, and is reviewed, in connection with the subsequent cases on the same question in the year 1833, in *Gleadon v. Atkin,* 3 Tyrwh. (Exch.), 289. It was there held, following the lead of the earlier case, that as the declaration was against interest and as there was no motive to misrepresent, it was admissible, not only against privies in blood or estate, but against all the world.

The rule as thus established is said to be founded on a knowledge of human nature. Self-interest induces men to be cautious in saying anything against themselves, but free to speak in their own favor. We can safely trust a man when he speaks against himself, and the law, in this instance, substitutes for the sanction of a judicial oath the more powerful one arising out of the sacrifice of a man's own interests. This natural disposition to speak in favor of, rather than against interest, is so strong that when one has declared anything to his own prejudice, his statement is so stamped with the image and superscription of truth that it is accepted by the law as proof of the correctness and accuracy of what was said, and the fact that it was against interest is taken as a full guaranty of its truthfulness in place, not only of an oath, but of cross-examination as well; they being the usual tests of credibility. A discussion of this rule of evidence, which shows how thoroughly it has been adopted by the courts, whether the declarations are in the form of mere words or of written entries, will be found in 1 Greenleaf Ev. (16 Ed.), secs. 147 to 154; 2 Wigmore Ev., secs. 1455 to 1471; McKelvey on Ev., pp. 254 to 261.

The case of *Higham v. Ridgeway,* 10 East, 109 (3 Smith's L. C., 9 Am. Ed., 1), recognized the principle to its fullest extent, and held that it embraced, not only the particular statement which was against interest, but others contained

in it, *Lord Ellenborough* saying that it is idle to admit a part
without the context. "All parts of the speech or entry may
be admitted which appear to have been made while the
declarant was in the trustworthy condition of mind which
permitted him to state what was against his interest."
2 Wigmore Ev., sec. 1465. Especially should the part of
the declaration that is not dis-serving be admitted if it is not
in itself self-serving, and tending, therefore, to promote the
interest of the declarant. In *Reg. v. Overseers,* 1 B. & S.
(101 E. C. L.), 763, the rule was held to apply to oral
declarations as well as to written entries or averments, the
difference between the two affecting rather the weight than
the competency of the testimony.

The three leading cases we have cited have been approved
in the later decisions and are regarded by the law-writers as
having firmly settled the principle to which they severally
relate. 9 Am. and Eng. Enc. of Law (2 Ed.), pp. 8 to 13;
16 Cyc., 1217 to 1222; *Davies v. Humphreys,* 6 M. & W.
(Exch.), 152; *Warren v. Greenville,* 2 Strange, 1129; *Doe
v. Robson,* 15 East, 32; *Doe v. Jones,* 1 Camp., 367; *Marks
v. Colnaghi,* 3 Bing. N. C., 408; *Percival v. Nanson,* 7 W. H.
& G. (Exch.); *Queen v. Church Wardens,* 101 E. C. L.,
761 (1 B. & S.), 763; *Doe v. Cartwright,* 1 C. & P., 216
(11 E. C. L., 373); *Doe v. Rawlings,* 7 East, 279; *Middle-
ton v. Melton,* 10 B. & C., 319 (21 E. C. L., 84); *Taylor v.
Williams,* L. R., 3 Ch. Div., 605.

In the case last cited *Sir George Jessell* said: "It is, no
doubt, an established rule in the courts of this country that
an entry against the interest of the man who made it is
receivable in evidence after his death for all purposes," and
that the argument against its competency based upon the
nature of the particular evidence offered, as affecting its
weight, has nothing to do with it. "The question of admissi-
bility is not a question of value." The cases decided in this
country are quite as emphatic and as much to the point.

*Elsworth v. Muldoon,* 15 Abb. Pr. Rep., 440.   That case also decides that it makes no difference whether the deceased and the party against whom the declaration is offered were in privity or not.   Cases which are very instructive and which review the English decisions at length are *County of Mahaska v. Ingalls,* 16 Iowa, 81; *Livingston v. Arnoux,* 56 N. Y., 519; *Humes v. O'Bryan,* 74 Ala., 78, and *Halvorsen v. Moon,* 87 Minn., 18.   See, also, *McDonald v. Wesendonck,* 62 N. Y. Sup., 764; *Heidenheimer v. Johnson,* 76 Texas, 200; *Quinby v. Ayres,* 95 N. W. Rep., 464; *Hinkley v. Davis,* 6 N. H., 210; *Taylor v. Gould,* 57 Pa. St., 152; *Bartlett v. Patton,* 33 W. Va., 71; *Railroad v. Fitzgerald,* 108 Ga., 507; 3 Am. Law Reg. (N. S.), 641.   They all support the doctrine of the leading cases we have cited.

This species of evidence was at one time said to be anomalous and to stand on the *ultima thule* of competent testimony; but an unbroken line of decisions in England and one almost so in this country, have established beyond question that verbal declarations are receivable under the conditions we have mentioned, even in controversies between third parties. The law is thus strongly stated in *Hinkley v. Davis, supra:* "In many cases where a man has the means of knowing a fact, and it is against his interest to admit it, his admission is evidence even against another person.   The evidence results, in such a case, from the improbability of a man's admitting as true what he knows to be false, against his interest.   In some cases such an admission is as strong against another person as it is against the person who makes it." *Lord Ellenborough* thus tersely presented somewhat the same view of the matter when, in *Doe v. Robson, supra,* he said: "The ground upon which this evidence has been received is, that there is a total absence of interest in the person making the entry (or declaration) to pervert the fact, and at the same time a competency in him to know it."   There is nothing that so strongly attests the truth of what a person declares, not

142—19

even his oath and the searching light of a cross-examination, as when he has asserted the existence of a fact and it appears that his interest at the time lay the other way. *Doe v. Jones, supra.* The words of sacred writ, "He that sweareth to his own hurt and changeth not," were uttered long before the era of our jurisprudence and set before us not only one of the most exalted attributes possessed by the exemplar of true virtue and probity, but embodied at the same time the highest standard by which we can safely gauge our trust and confidence in human testimony. It is not at all a matter for surprise, therefore, that the common-law jurists should have regarded it as a perfectly safe test for discerning the truth in judicial investigation.

This rule of evidence has been fully adopted by this Court, as its decisions will show. The principal case is *Peck v. Gilmer,* 20 N. C., 391 (4 D. & B., 249). Recognizing the authority of the cases at common law to which we have referred, *Judge Gaston,* for the Court, thus states the principle: "It is a well-established rule that where a person who has peculiar means of knowing a fact makes a declaration or written entry of that fact which is against his interest at the time, such declaration or entry is, after his death, evidence of the fact as between third persons." This case was followed and the rule as therein stated, applied, in *Peace v. Jenkins,* 32 N. C., 355; *Patton v. Dyke,* 33 N. C., 237; *Williams v. Alexander,* 50 N. C., 162; *Carr v. Stanly,* 52 N. C., 131; *Jones v. Henry,* 84 N. C., 324; *McCanless v. Reynolds,* 67 N. C., 268; *Braswell v. Gay,* 75 N. C., 515.

We must not confuse these declarations with entries made in a due course of business or in the discharge of a public duty, nor with a declaration which accompanies and explains an act, and deemed, therefore, to be a part of the *res gestœ* (*Yates v. Yates,* 76 N. C., 142), because while they are all admitted as evidence, they are not so admitted for the same reason.

We must now consider whether the declaration of Mrs. Smith to Mrs. Boudinot comes within the rule stated. Was it a declaration against her interest, at the time she made it? We think it was. She was then in possession of the lot and ostensibly the owner thereof, and when she declared that she had parted with her title and did not own the estate of which she was apparently seized, it could not be anything other than such a declaration. In *Ivat v. Finch,* 1 Taunton, 141, *Lord Mansfield,* speaking of the declaration of a party that she had assigned or transferred certain property, said: "The evidence ought to have been received; though undoubtedly such declarations would be entitled to a greater or less degree of attention according to the circumstances by which they were accompanied. The admission, supposed to have been made by Mrs. Watson, was against her own interest." The evidence was received. To the same effect are *Bank v. Holland,* 99 Va., 501; *Reg. v. Overseers,* 1 B. & S., 763 (101 E. C. L., 768 and 769); *Chadwick v. Fonner,* 69 N. Y., 404; *Turner v. Tyson,* 49 Ga., 165; *Bowen v. Chase,* 98 U. S., 254. Cases which appear to be directly in point are *Lyon v. Ricker,* 141 N. Y., 225; *Tuggle v. Hughes,* 28 S. W. Rep., 61, and *Howell v. Howell,* 49 Ga., 492. We have seen that any other statement associated in the declaration with the one against interest, is just as competent as the latter, and especially is that true in a case like the one at bar, where the collateral statement bears directly on the other and tends to confirm and strengthen it. The deed to Mr. Moore is attacked for fraud, because what was in fact a deed was represented to be a will, and the declaration by Mrs. Smith to Mrs. Boudinot was, not only that she had made a deed, and therefore knew the character and contents of the paper-writing, but that she executed it upon a meritorious consideration and substantially that she acted freely and voluntarily when she did so. What could be more against her interest than such a statement, and what could carry with

·it more conclusive evidence of its truth and accuracy? It was in disparagement of her apparent title, and made at a time which was recent with respect to the date of the main transaction, when it must be supposed she had a clear recollection of what had occurred, and also long prior to the beginning of this controversy—*ante litem motem.* Her interest was all on the side of herself and her daughter, who lived with her, or at least it must now be supposed to have been that way, nothing else appearing. Her motive was a most commendable one—gratitude for what Mr. Moore had done for her; and she spoke with feeling and emphasis; but this does not have the effect in law, as the cases show, to rebut the presumption that she was declaring against her own interest. But it may be suggested that she was not in privity, with her daughter, the plaintiff, as she had but a life-estate and her daughter a contingent remainder, which since the death of her mother has become a vested one in interest and possession. This is true, but it does not prevent the application of the rule, for the declaration being against interest, it is admitted because of the likelihood of its being true and of its general freedom from any reasonable probability of fraud or imposition, and is for that reason held to be competent as to third parties. It is not, therefore, within the principle of exclusion, as being *res inter alios acta. Lyon v. Ricker,* 141 N. Y., 225; *Higham v. Ridgeway, supra.* It may be further objected that even if the declaration is otherwise competent, the fact that Mrs. Smith supposed she had executed a deed is not evidence that the plaintiff had the same opinion as to the nature of the instrument. There is every reason, we think, why under the peculiar facts of the case we should hold this objection to be untenable and the reason for it to be unsound. The allegation is that the deed was executed at the home of Mrs. Smith and her daughter, in the presence of Mr. Moore, the attorney, and some other persons who are now dead, the plaintiff being the sole sur-

vivor of those then present. The deed was executed by the mother and daughter then and. there, and the alleged representation of the attorney was to both of them at that time. It was all one and the same transaction, without a single break in its continuity from beginning to end. Under such circumstances, can it be denied that the impression received by Mrs. Smith of what was said and done, the execution of the deed being a joint act, is at least some evidence as to what the true nature of the transaction was; and as she heard what the attorney said, should it not be received as some evidence of what his words were and what they really meant; and finally, may it not safely be admitted to show that possibly the plaintiff is mistaken as to what was said and as to what did occur? Where two persons have equal opportunity of knowing a fact, one is as competent to give a correct version of it as the other—or at least should be. We frequently receive the evidence of two persons, one against the other, as to whether a certain thing was done or not, one testifying that he saw it done and the other that he did not. The declaration of Mrs. Smith was equivalent to her saying that she did not hear any such representation made as that which is imputed to the attorney, or that it was not in fact made, according as her testimony is construed. We are constrained to think that the evidence is both competent and relevant and should be heard by the jury in its entirety.

Before taking leave of this part of the case, we will refer to three cases which seem to be very much in point just here. The first is that of *Lamar v. Pearre,* 90 Ga., 377, which bears a striking resemblance to our case in several of its features. There it was held, when it was attempted to establish a trust in certain property, that a declaration of a life-tenant as to the subject under investigation was competent against the remainderman, as it disparaged her own estate in the property, and was, therefore, against her interest, and that the additional statements relevant to the principal fact

and embraced with it in the declaration against interest were also competent. In that case, as here, the life-tenant and remainderman acquired their interests under a settlement in trust for their benefit. ·The two cases are practically parallel. The second is *Howell v. Howell,* 47 Ga., 492, in which the deed in question was attacked as having been procured by undue influence and fraud. The declarations of the donor were held competent to show that he knew the nature and contents of the paper, and to repel the imputation of fraud. The third is *Bowen v. Chase,* 98 U. S., 254, which, while not precisely like the other two cited cases, nor like our case, in the object for which the suit was brought, is in its main features, and so far as the general question now being discussed is concerned, enough like them to be an important authority in support of the principle we have already stated and applied. The cases in our own reports which approach more nearly than any others to a decision of the very question here presented, are *Pearce v. Jenkins,* 32 N. C., 355; *Patton v. Dyke,* 33 N. C., 237.

The fact that the plaintiff relies on the continued possession of the lot by herself and her mother, after making the deed, as evidence of the false representation, imparts still greater significance to the mother's declaration, as from her declaration the jury might have found that she did not so regard the retention of possession by her and her daughter, and that the latter shared in that view, the; fraud being alleged to have been practiced upon both of them at the same instant of time, and it being, therefore, at least probable that it produced the same impression upon both. Speaking with reference to a case somewhat similar, *Judge Nash* said: "The declarations were made by a man, upon the subject in controversy, against his interest, and when he could have no conceivable interest to declare that which was not true," *Pearce v. Jenkins, supra;* and so we say here concerning the declaration in question. The text-books and the cases do

not justify the statement that this species of evidence is anomalous in character and approaches the verge of admissible testimony, for even a cursory examination of the authorities will show that it is well-nigh universally conceded to be an established exception to the rule excluding hearsay and an unshakable principle in the law of evidence. As *Lord Ellenborough* said in the opening passage of his opinion in *Higham v. Ridgeway,* 10 East, 108: "We should be extremely sorry if anything fell from the Court upon this occasion which would in any degree break in upon those sound rules of evidence which have been established for the security of life, liberty, and property; but in declaring our opinion upon the admissibility of the evidence in question, we shall lay down no rule which can induce such ruinous consequences, nor go beyond the limits of those cases which have been often recognized, beginning with that of *Warren v. Greenville.*" Having disposed of this exception, we now proceed to consider the remaining questions in their order.

We cannot sustain the exception to the instruction of the Court that from the relation of the parties—Mr. Moore being the "agent, confidential friend and adviser of the plaintiff and her mother"—the law raised a presumption of fraud as to any transaction between them, which is evidence of fraud to be considered by the jury and imposes upon the defendants the burden of showing that the transaction was fair and honest, and that if the defendants had failed so to do the jury should answer the issue as to fraud "Yes." With reference to the fiduciary relations from which presumptions of fraud or undue influence are raised, that of principal and agent is thus classified: 1. When one is the general agent of another and has entire management of his affairs, so as in effect to be as much his guardian as the regularly appointed guardian of an infant, a presumption of fraud, as matter of law, arises from a transaction between the agent and his principal for the latter's benefit, and it will be decisive of

the issue in favor of the principal unless it is rebutted. 2. When the only relation is that of friendly intercourse and habitual reliance for advice and assistance and occasional employment in matters of business as agent, a presumption of fact only is raised from such a transaction, which may be strong or slight according to circumstances. The latter is for the jury to consider and act upon. *Lee v. Pearce,* 68 N. C., 76; *Timmons v. Westmoreland,* 72 N. C., 587; 1 Bigelow on Fraud (1890), p. 295. When a party, complaining of a particular transaction, such as a gift, sale, or contract, has shown to the Court the existence of a fiduciary or a confidential relation between himself and the defendant, and that the defendant occupied the position of trust or confidence therein, the law raises a suspicion or, it is often said, a presumption of fraud—a suspicion or presumption, arising as matter of law, that the transaction brought to the notice of the Court was effected through fraud or, what comes to much the same thing, undue influence by reason of his occupying a position affording him peculiar opportunities for taking advantage of the complaining party. Having special facilities for committing fraud upon the party whose interests have been intrusted to him, the law, looking to the frailty of human nature, requires the party in the superior situation to show that his action has been honest and honorable." 1 Bigelow on Fraud, p. 261, *et seq.* This presumption is raised where there have been dealings between the parties, because of the advantage which the situation of the parties respectively gives to one over the other. The doctrine rests on the idea, not that there actually was, but that there may have been fraud, and an artificial effect is given to the fiduciary relation beyond its natural tendency to produce belief of the fact that fraud really existed. *Lee v. Pearce, supra.* It does not appear clearly from the evidence or the admission, whether or not Mr. Moore was the general agent of the plaintiff and her mother at the time the

deed was executed, and had the management of their entire
business, nor does it appear what was the nature and scope
of his agency. It is merely said that he was their agent.
We take it that this was intended to mean a general agency
investing him with control and management of all of their
affairs, and so considered, in connection with the other part
of the admission, that he was also their confidential friend
and adviser, we think the charge of the Court was correct.
In *Lee v. Pearce,* the *Chief Justice,* referring to the facts of
that case, at p. 87, says: "Our case would seem, from what
appears by the statement, to come under the last instance
(second class mentioned above); for there is no evidence that
Pearce was the general agent of Mrs. Lindsey, intrusted
with the management of all her affairs or business, although
he was looked up to by her, and relied on for advice and
assistance, and frequently acted as her agent in buying wood
and leasing her property; all of which evidence should be
passed upon by a jury, as raising a presumption of fraud or
undue influence, and as being a link in a chain of circum-
stantial evidence." It may be that the proof at the next trial
will disclose just such a relation as there described and
change the nature of the presumption or weaken its force.
Be this as it may, we do not think his Honor, upon the facts
as presented at the trial, and as we now construe them, mis-
applied the rule, as stated in *Lee v. Pearce.* The presump-
tion of fraud is of course a rebuttable one.

The last assignment of error questions the correctness of
the charge, so far as it relates to Mr. Moore's failure to regis-
ter the deed from the day of its date, 3 March, 1885, to
3 January, 1886, it being ten months. In the trial of ques-
tions of fraud the evidence necessarily takes a wide range
and great latitude is allowed in adducing proof to disclose
the true nature of the transaction, and it has been said to be
enough if the evidence falls within a broad interpretation of
the rule of relevancy. Circumstances very slight and appar-

ently trivial in themselves are permitted to be shown in connection with the other facts in order to sustain the allegation of fraud. 1 Bigelow on Fraud, 146. The plaintiff does not contend that Mr. Moore was compelled to register the deed under the statute, it being good as between the parties without registration, which is required only to protect the grantee against creditors and subsequent purchasers. *Nadal v. Britton,* 112 N. C., 180. But she says· that withholding this deed from record ·was some evidence of a purpose to conceal it, so that the public could not see it and thereby diminish the chance of the grantor's discovering that it was a deed instead of a will. While, perhaps, very slight evi- . dence and inconsequential in itself, we yet think that it was a circumstance to be left to the jury with the other facts. But the Court should be careful, in submitting it, to direct their attention also to the fact that the deed was registered on 3 January, 1886, and has remained on the record to the bringing of this suit. This fact they should consider in connection with the other, in order to determine what weight they will give to the latter.

We have discussed all of the exceptions as they may be repeated if there is another appeal and we had not done so, but we order a new trial because of the error committed in permitting the plaintiff to testify as to what the attorney said in the presence and hearing of herself and her grantee, now deceased.

The plaintiff's counsel contended that the deed of Lorenzo Frink, to her and her mother, vested the legal title in them in trust to serve the uses declared in the will of Samuel Frink, and that Mr. Moore, under the deed to him, took the title in the same plight as they formerly held it. It is not necessary to discuss this proposition, so far as the life-estate of Mrs. Smith is concerned, as it terminated at her death and is therefore out of the way. But see *Cameron v. Hicks,* 141 N. C., 21. If the plaintiff acquired the legal title by the

deed of the trustee, Lorenzo Frink, it either merged with her equitable estate, or if it was held by her separately from it, as contended, then when Mrs. Smith died, there being no longer any need for the separation of the two estates, the plaintiff's contingent remainder having become a vested one, the statute, if she had not conveyed to Mr. Moore, would have transferred the seizin or possession to the use. By her deed to Mr. Moore she passed both the legal and equitable estate held by her, that is, all the interest she then had, and when Mrs. Smith died, the statute executed the use, in the same manner, if he who was then entitled to the use had not already, in another way, acquired the seizin, and the operation of the statute was not therefore required to vest it in him. It is not necessary to inquire whether the deed of Lorenzo Frink had the effect to convey his legal title, as the same result would follow if it did not have that effect, for in that case it would have descended to his heirs charged with the trust, and their seizin would, at the death of Mrs. Smith, have been transferred to the use, as it was no longer required to remain in them to serve the purposes of the trust. *Cameron v. Hicks, supra.* If the plaintiff did not acquire the legal title by the deed of Lorenzo Frink, or if she did and it was held by her separate from the use, her deed, she having at the time a contingent remainder, was sufficient to pass the latter to Mr. Moore by way of equitable assignment, and operated not merely as an executory contract to convey, but as an executed one by way of passing her interest. This was expressly decided in the recent case of *Kornegay v. Miller,* 137 N. C., 659, where the subject is so fully and clearly discussed by *Mr. Justice Connor* as to make it unnecessary that we should pursue the inquiry any further. See, also, *Cheek v. Walker,* 138 N. C., 446; *Gray v. Hawkins,* 133 N. C., 1; *Bodenhamer v. Welch,* 89 N. C., 78; *Watson v. Smith,* 110 N. C., 6.

So that, *quacunque via data,* Mr. Moore got the complete and perfect title, legal and equitable, by the transaction, and his widow and her heirs are entitled to keep and enjoy the same, unless the deed to him was obtained by the fraud charged in the complaint, or can in some other way be invalidated.

For the reason we have already stated, a new trial is awarded.

New Trial.

HOKE, J., concurs in the result.