## CHEEK v. WALKER.

### (Filed May 23, 1905.)

*Wills—Contingent Remainders,. Conveyance of—Contingencies.*

1. Where a father devised to his son (the plaintiff) certain property and by a codicil provided if his son "dies unmarried or leaving no children," the property shall go to certain relatives, *held*, that deeds executed by said relatives and by the children of such as were dead, conveying to the plaintiff "all the right which they now have or may hereafter have" in said property vest in him an indefeasible title.

2. Contingencies, which import a present interest of which the future enjoyment is contingent, are devisable and descendible and may be the subject of release in certain cases, operating as an estoppel on the heirs and effectual as a valid conveyance.

CONTROVERSY without action by Thos. Edgar Cheek and wife against Jno. B. Walker, heard by *Judge R. B. Peebles,* at the May Term, 1905, of the Superior Court of DURHAM County.

This is a controversy without action, submitted upon an agreed state of facts, under Code, section 567. J. W .Cheek, being the owner in fee of the *locus in quo,* executed his will

in due form and died during the year 1875. The will was duly admitted to probate. He devised the land described in the deed attached to the record together with other real estate to his son, the plaintiff, T. E. Cheek. He executed a Codicil May 20, 1875, in the following words: "If Thomas Edgar dies unmarried, or leaving no children, I wish two-thirds of his property to go to my brothers and sisters, and the other third to his mother." The plaintiff was at the time of his father's death nine years of age. He is now married and has one child.

J. W. Cheek left surviving his widow, Rebecca H., who has since intermarried with A. D. Markham. He also left surviving one brother and several sisters—some of whom have died leaving children. The mother of plaintiff together with her husband—the living sisters together with their husbands, and the children of the deceased brother and the deceased sisters have all executed deeds to the plaintiff, reciting the execution of the will—the terms of the codicil and in consideration of ten dollars conveying, releasing, confirming and quit claiming all the right which they now have or may hereafter have in and to the lands devised as aforesaid. Said deeds are duly proven and recorded. On the 10th day of March, 1905, the plaintiff contracted to sell to the defendant a portion of the land devised to him as aforesaid for a full and valuable consideration. Pursuant thereto he, together with his wife, has executed and tendered a deed, with full warranty and in proper form, conveying to him said land. The defendant declined to accept said deed for that plaintiff cannot make a good and indefeasible title, etc. The question submitted for the decision of the court is whether, upon the facts agreed, the deed does convey a good and indefeasible title. His Honor, being of the opinion that it did rendered judgment accordingly, to which defendant excepted and appealed.

*Manning & Foushee* for the plaintiff.
*Winston & Bryant* for the defendant.

CONNOR, J., after stating the facts.   The plaintiffs contend that by a proper construction of the will of Jno. W. Cheek and codicil thereto, the word "or" should be read "and," so that the contingency upon which the title to the land should vest in the mother and brothers and sisters would be both dying unmarried and leaving no children. If this view should be adopted Thos. Edgar having married and had issue the title has become absolute.   It is suggested that the word "unmarried" primarily means never having been married.   There seems to be authority to support the contention, and in view of the fact that the plaintiff was only nine years of age at the date of the will and the death of the testator, and was his only child, it is more than probable that such was his intention.   It is hardly probable that he intended to tie up, during his life, the title to his inheritance, consisting of houses and lots, tobacco factory lot and cotton gin lot, in a growing town for the benefit of his (testator's) brothers and sisters and his widow.   This view is strengthened by the fact that he gives, in the event of his (Thos. Edgar's) death one-third to his mother.   He could hardly have intended that this limitation should extend through the life time of his son for the benefit of his mother, who was many years his senior.   The same may be said of his intention respecting the interest given his brothers and sisters. Authority may be found to sustain the suggestion that the primary intention of the testator would be effectuated by reading the word "or" as "and."   Underhill on Wills, 448; 30 Am. & Eng. Enc., 691; *Turner v. Whitted,* 9 N. C., 613. We do not deem it necessary, however, to pass upon the question, because in our opinion the deeds executed by those who, in the event of the death of Thos. Edgar, unmarried or without leaving children, would take, vest in him a good and in-

defeasible title.   Approving *Whitfield v. Garris,* 134 N. C., 24, we are of opinion that Thos. Edgar took a fee, defeasible on condition that he dies unmarried and leaving no children, in which event the mother and brothers and sisters would take.   We considered the effect of the conveyance by those who will in the event provided for take in *Kornegay v. Miller* (at this term), (50 S. E. Rep., 315).   We do not deem it necessary to review the authorities cited.   The appellant does not call to our attention any authority in conflict with our conclusion in that case.   He suggests that a decision of this court cannot "bind unborn generations who may and no doubt will some day contest the defendant's title if they can."   Undoubtedly no court can otherwise than by declaring the law as it understands it in a cause brought before it for adjudication bind unborn generations.   We can only adjudge rights as they are presented to us.   The stability of our decisions must rest upon the reasons upon which they are based, the value of the authorities cited and the well settled principle that courts will not lightly or save upon overpowering necessity unsettle decisions which have become rules of property upon which people have relied and invested their money.   We gave the subject in *Kornegay v. Miller* a careful and we think thorough investigation.   While we reviewed the decided cases in this court and endeavored to gather and declare the principle upon which they are founded, we brought none of them into controversy, unsettled no conclusion reached nor disturbed any right acquired under them. We declared as the conclusion to be drawn from them that the deeds executed by those entitled to the contingent remainder, passed to and vested in the grantee or assignee a perfect title, operating not simply by way of an executory contract or estoppel, but as an executed contract and that in the absence of fraud or imposition the court would not inquire into the adequacy of the consideration.   We think this conclusion in accordance with the latest authorities and "the reason

of the thing" and see no reason upon further consideration to doubt the soundness of that decision. There is, however, another view of the subject which we overlooked in the opinion, which strengthens and sustains our view. In *Wright v. Wright,* 1 Ves. Sen. 410 (27 Eng. Rep., Reprint 111), *Lord Chancellor Hardwicke* said: "This is a claim by an heir at law against the act of his ancestor done for what this court calls a valuable consideration in the second degree by way of provision or advancement for a younger child. There are two questions. Whether Robert had such a contingent interest, right or possibility in the lands in question as by any act in the consideration of this court he could convey, assign or dispose of. Secondly, supposing he had such a contingent interest as a possibility is properly described to be, whether in fact he has conveyed it by the deed he has executed." After discussing the terms of the will under which Robert took, the Lord Chancellor says: "But still it was an executory devise not a remainder on a fee given before . . . But that is still in notion of law a possibility; which though the law will not permit to be granted or devised, still it may be released, as all sorts of contingencies may to the owner of the land. The reason of the law's not allowing such a disposition, which this court will, are mostly very refined, and *Lord Cowper* says in *Thomas v. Freeman* (2 Vern. 563), would not have prevailed now." *His Lordship* at some length discusses the reason and history of the law and concludes a review of the authorities by saying, "This is the same thing, though not in that shape; the court not laying weight on the manner, but the substance." He answers the second question by saying that though the grantor had left out the word possibility in the deed "It is true he had no immediate claim or demand; but the word *claim* may describe it *in presenti* or *futuro,* etc." Blackstone (2 Com. 290), says: "Yet reversions and vested remainders may be granted; because the possession of the particular tenant is the possession

of him in reversion or remainder; but *contingencies* and *mere* possibilities, though they may be released or devised by will or may pass to the heir or executor, yet can not (it hath been said) be assigned to a stranger, unless coupled with some present interest." We find a note in Mr. Lewis' Edition of Blackstone, page 290, which so clearly expresses our view and fully sustains our decision in *Kornegay v. Miller, supra,* noting the distinction, sometimes overlooked, between contingent interests where the person is certain but the event upon which he will take uncertain, and mere possibilities, that we quote it at length. "Mr. Ritson remarks that, independently of thus confounding contingencies and mere possibilities, as if they were in *pari ratione* (the same reason, i. e., under the same rule)—which they certainly are not—there is here a great mistake; first, in describing mere possibilities to be such as may be released or devised by will, etc.; and, secondly, in supposing devisable possibilities to be incapable of being assigned to a stranger. For, in the first place, there is this wide difference between contingencies (which import a present interest of which the future enjoyment is contingent) and mere possibilities (which import no such present interest), namely, that the former may be released in certain cases, and are generally descendible and devisable, but not so the latter. Suppose, for instance, lands are limited (by executory devisee to A in fee, but if A should die before the age of twenty-one, then to C in fee; this is a kind of possibility or contingency which may be released or devised, or may pass to the heir or executor, because there is a *present interest* although the enjoyment of it is future and contingent. But where there is no such present interest, as the hope of succession which the heir has from his ancestor in general, this, being but a *mere* or *naked* possibility, can not be released or devised."

The learned counsel for appellant says: "We grant that the deeds executed by the present brothers and sisters of J.

W. Cheek bind them, and if the present *status quo* remains until the death of Thomas Edgar the defendant's title will be perfect and indefeasible. But how is it possible for the deed of a brother of J. W. Cheek to operate as an estoppel upon his heir, when as a matter of fact such brother never owned the property in dispute, was never in possession and never had any interest in it until the happening of a certain event, to-wit, the death of Thomas Edgar?"

The answer to the suggestion is we think manifest. The brothers and sisters of J. W. Cheek owned such an interest as was devisable and if not parted with, descended to their heirs. As we have seen, without any controversy, this interest was the subject of release to the owner of the land—which would in any event operate as an estoppel on their heirs—and as we hold is equally effectual as a valid conveyance. We have in deference to the evident doubts entertained by the learned counsel given the question a careful re-examination with the result stated herein. While we adhere to what was said in *Kornegay v. Miller,* in any aspect of this case the deed of the plaintiff, Thos. Edgar, conveys a good and indefeasible title, either by way of a conveyance or a release. The judgment must be

Affirmed.