The agreed facts are substantially as follows: Plaintiff contracted to convey to defendant an indefeasible fee-simple title to certain land in Mecklenburg County, for which defendant contracted to pay plaintiff the sum of $7,000. Plaintiff thereupon executed and tendered to *Page 793 
defendant a deed, admitted to be in due and proper form, for the land in question, which defendant refused to accept, and refused to comply with his part of the contract, on the ground that the plaintiff did not have, and his said deed did not convey, an indefeasible fee-simple title to the said land; and this controversy without action was instituted for the purpose of determining the respective rights of the parties.
The special facts relative to plaintiff's title are as follows: In 1880 Nancy S. Smith owned certain land in Mecklenburg County, and by deed which appears in the record on page 11, marked "Exhibit B," she conveyed the property to one B.R. Smith and his heirs, to be held in trust for the purpose and upon the limitations therein particularly set forth. After the death of Nancy S. Smith, and under authority of Revisal, sec. 1590, this land was sold, and the proceeds reinvested in the land which the plaintiff contracted to convey to the defendant, and which was conveyed by B. V. Dinkins and husband to B.R. Smith and his heirs and assigns, to be held in trust for the purposes and upon the limitations set forth in the deed. It was agreed that B. V. Dinkins and husband had and conveyed an indefeasible fee-simple title to the said land. Of the persons named in the original, or Smith deed, the following are dead: B.R. Smith, trustee; Junius M. Lee, who was the husband of Elizabeth Jane Lee; Anna B. Lee, who died unmarried and without issue; W. Bernard Smith, who died without issue; W. Mac. Smith, the father of Lillian and W. Bernard Smith; and Carrie E. Smith, his wife. The following are still living: Elizabeth Jane Lee, B. Rush Lee, and Lillian A. Smith (now Lillian S. Springs), having married R. C. Springs. The heirs of B.R. Smith are Garnet and Eloise Smith. The heirs of Nancy S. Smith, the grantor in the original deed, are many, and scattered. At the time of the execution of the original or Smith deed plaintiff B.R. Lee was 6 years of age. This does not appear in the case agreed, but is a fact; and is stated by defendant at plaintiff's request. The date of the reinvestment proceeding was March, 1905, and this proceeding is still formally open and pending upon the court records. After the death of B.R. Smith, the trustee in the original deed, an order was made in this reinvestment proceeding appointing W. D. Wilkinson as trustee in the place of B.R. Smith, trustee; but no notice of this order or appointment was served upon any of the parties to the reinvestment proceeding, nor upon any of the heirs at law of B.R. Smith, the original trustee, who were not (720) parties to this proceeding; nor were the heirs at law of Nancy S. Smith, the original grantor, notified of this proceeding. The limitation in the original deed reads as follows: Mrs. Nancy S. Smith on 6 April, 1880, for $1 and natural love and affection bargained, sold, and conveyed to B.R. Smith (her son), his heirs and assigns, the land described *Page 794 
in the deed, "in special trust for the sale and separate use and benefit of Elizabeth Jane Lee during her life, free from the debts and control of her husband, Junius M. Lee, and after her death to the use of the said Anna B. Lee and B. Rush Lee, their heirs and assigns forever; and in the event of the death of either the said Anna B. Lee or B. Rush Lee without issue, then to the use of the survivor and his or her heirs forever; and in the event of the death of both the said Anna B. Lee and B. Rush Lee without issue, then to the use of the said Lillian A. Smith and W. Barnard Smith and their heirs; and in the event of the death of either the said Lillian A. or W. Bernard Smith without issue, then to the use of the survivor of them and his or her heirs; and in the event of the death of them both in the lifetime of their father, then to the use of Mrs. Carrie E. Smith during her life and (surviving her husband) widowhood, with remainder to the right heirs of the parties of the first part: Provided, and it is hereby expressly agreed, that the said Elizabeth Jane Lee shall not have the power to sell her said estate or the profits arising therefrom by anticipation or otherwise; and Provided, also, and it is hereby agreed and declared, that it shall and may be lawful to and for the said Nancy S. Smith, party of the first part, at any time during her natural life, by any writing or writings under her hand and seal, testified by two or more credible witnesses, or by her last will and testament in writing, so testified as aforesaid, to alter, change, revoke, annul, and make void all and every the use and uses, estate and estates hereby limited, appointed, and declared, and any other use or uses, estate or estates thereof, to limit, appoint, and declare, as to her, the said Nancy S. Smith, shall seem meet."
Plaintiff has deeds in due form, executed by the respective parties, purporting to convey to him all interests of Elizabeth Jane Lee, life tenant, and of Lillian S. Springs and her husband, which deeds contain full covenants of seizin, right to convey, and warranty, further assurance, and against encumbrances. Plaintiff also has a deed from W. D. Wilkinson, trustee, conveying to him all of the title of the said Wilkinson.
Plaintiff contends that his title to the land described in the contract and the deed tendered by him is good and indefeasible, upon the following grounds:
 1. The deed of the life tenant is valid, and effectual to pass her interest to the plaintiff.
(721) 2. The deed of the contingent remainderman is valid.
3. The legal title is not outstanding.
4. The heirs of Nancy S. Smith do not have an outstanding reversionary interest.
5. The deed which the plaintiff has tendered is sufficient to convey to the defendant an indefeasible fee-simple title to the land. *Page 795 
Defendant, on the contrary, says that the title is not good and indefeasible and that plaintiff cannot comply with the contract on his part, for the following reasons:
1. The deed of the life tenant is void, and ineffectual to pass her interest to plaintiff.
2. The deed of the contingent remainderman is not valid.
3. The legal title is still outstanding.
4. The heirs of Nancy S. Smith have an outstanding reversionary interest.
The court was of the opinion that the plaintiff is seized and possessed of a good and indefeasible title and that the deed tendered by him is sufficient to convey the same to the defendant, and adjudged that the contract be specifically performed and that defendant pay the amount of the purchase money and interest and that plaintiff deliver the deed to him. There were other provisions in the decree to provide against a default.
Defendant excepted and appealed.
After stating the case: The first objection to the title, which the plaintiff has offered by his deed, is that one of his grantors, Mrs. Elizabeth J. Lee, was by the deed of Mrs. Nancy S. Smith, the original source of title, forbidden to sell her life estate or the proceeds arising therefrom by anticipation or otherwise. There is such a provision in the deed, but, being a condition subsequent and one that is void as against public policy, she held her estate discharged of it. There is a conflict in the authorities, but this Court has for many years consistently held that the doctrine as to restraints on alienation applies as well to estates for life as to estates in fee simple, and to equitable estates as well as to legal estates. "A restraint on the alienation of an equitable estate is as much against public policy as is a restraint on the alienation of a legal estate. Certainly no one has ever shown a distinction." Gray's Restraints on the Alienation of Property (1895), p. 241. This is a well settled rule, as is shown clearly in our decisions, and the sound reasons for its adoption are fully stated. The question is so fully discussed in the comparatively recent case of Wool v. Fleetwood,136 N.C. 460, that a bare reference to the other cases (722) is all that is required to show that it has long been the accepted doctrine of this Court. Dick v. Pitchford, 21 N.C. 480; Mebane v.Mebane, 39 N.C. 131; School Comrs. v. Kesler, 67 N.C. 447; Pace v.Pace, 73 N.C. 119; Hardy v. Galloway, 111 N.C. 519; Pritchard v. *Page 796 Bailey, 113 N.C. 521; Latimer v. Waddell, 119 N.C. 370; Christmas v.Winston, 152 N.C. 48, and Trust Co. v. Nicholson, 162 N.C. 257; 24 A. and E. Enc. of Law, 870, and notes. "The capricious regulations which individuals would fain impose on the enjoyment and disposal of property must yield to the fixed rules which have been prescribed by the supreme power as essential to the useful existence of property." Dick v. Pitchford,supra. We have simply followed the English rule.
The recognized exception to the principle that provisions against alienating life interests are void is in the case of a married woman. About the beginning of the eighteenth century equity established the doctrine of the separate estate of married women, by which they could have equitable interests in property apart from their husbands and free from their husbands' control. This doctrine has always been distinctly regarded a violation of the rules of law, introduced for the benefit of married women. Gray on Restraints, pp. 138, 139. That writer says, at secs. 141, 142: "It was found that the doctrine gave very imperfect protection to married women, because they were still in danger of parting with their property under the influence or threats of their husbands, and Lord Thurlow, at the end of the last century, invented the clause against anticipation, which was generally adopted, and the validity of which it was declared by Lord Eldon, in 1817, in Jackson v.Hobhouse, 2 Mer., 483, 488, to be too late to question. It is only, however, in connection with the separate estate of a married woman that this restraint upon anticipation has been allowed in England; and the general doctrine that neither law nor equity allows any person, except a married woman, to have an alienable life interest has been constantly asserted. Thus, per Lord Cottenham, Chancellor, in the great case of Tullet v. Armstrong, 4 Myl. and Cr., 377, 393, 394, 405: `The power (to prohibit anticipation) could only have been founded upon the power of this Court to model and qualify an interest in property which it had itself created, without regard to those rules which the law has established for regulating the enjoyment of property in other cases.' `The separate estate and the prohibition of anticipation are equally creatures of equity, and equally inconsistent with the ordinary rules of property. The one is only a restriction and qualification of the other. The two must stand or fall together.' When this Court first established the separate estate, it violated the laws of property as between husband and wife; but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy her separate estate as a feme sole, (723) the laws of property attached to this new estate; and it was found, as part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered, and, by another violation of the laws of property, *Page 797 
supported the validity of the prohibition against alienation." This is a satisfactory view of the rule, its origin and development.
But the exemption of a married woman's separate equitable estate was intended for her protection just so long as she needs it, for that purpose; but when the marital tie is severed by the death of the husband, as in this case, it is required no longer as a protection against his improvidence.Ruffin, C. J., says in Mebane v. Mebane, supra: "The doctrine rests upon these considerations: that a gift of the legal property in a thing includes the jus disponendi, and that a restriction on that right, as a condition, is repugnant to the grant, and therefore void; and that, in a court of equity, a cestui que trust is looked on as the real owner, and the trust governed in this respect by the same rules which govern legal interest; and, consequently, that it is equally repugnant to equitable ownership that the owner should not have the power of alienating his property. There is, indeed, an exception to the general rule, which is founded on the peculiar incapacities of married women and their subjection to their husbands. A gift in trust for the separate use of a married woman, or in contemplation of her marriage, may be coupled with a provision against alienation or anticipation; for, in truth, the restriction is imposed for her protection, and, as she is sub potestate viri, it will more frequently operate as a beneficial protection than in prejudice to her. But restraints, as conditions merely, upon alienation by a person sui juris have been held in a great number of cases to be null, as regards property given through the medium of a trust; and several of them are cited in Dick v. Pitchford,supra." 8 Ruling Case Law, secs. 174, 175, 176, contains a clear and succinct statement of the doctrine.
But we have said when the reason for the exception in favor of a married woman ceases, the rule will then operate as fully as if there had been no exception, and this is when she becomes discovert by death or absolute divorce, so that her husband has no further control or dominion over her. Cord in his Treatise on the Legal and Equitable Rights of Married Women says at p. 427, sec. 1163: "A further and very important protection over property settled on the wife at the time of her marriage, for her separate use, is a clause against a power to sell, convey, or assign, by anticipation; such is held to be an obligatory and valid mode of securing the same more effectually to her against marital influences. This restraint, however, ceases on the death of her husband, the reason and expediency for it having ceased." A learned and able review of this subject, with a full citation of authorities bearing upon it, will be found in 2 Kent Commentaries, 12 Ed. (724) (1873), side page 170, notes b and (1). It is there said that "a clause in a gift or deed of settlement upon the wife, against anticipation, *Page 798 
is held to be an obligatory and valid mode of preventing her from depriving herself, through marital or other influence, of the benefit of her property." The notes to the text will show that the courts have regarded the restraint as entirely inoperative when she is discovert.
Junius M. Lee died in the year 1902, and the restraint on alienation or anticipation was void from that time, and as the deed of Mrs. Lee, his widow, was executed on 11 January, 1916, the title it passed was unaffected by this provision of Mrs. Nancy S. Smith's deed. Nor do we think that, because the restraining provision is in the form of a covenant, it is any more valid than if it had been called a condition. A covenant which is against public policy is no more enforcible, and of no greater force or effect, than a mere condition. Both restrain and are equally void. Jervisv. Burton, 2 Vernon, 251. "Invalid conditions or provisions against alienation in a deed or will do not defeat the estate to which they are annexed. In such cases the gift stands and the invalid condition or provision is rejected." 24 A. and E. Enc. (2 Ed.), p. 872.
There is no provision for a limitation over upon breach of the condition or covenant in this deed, which might save the condition. Wool v.Fleetwood, supra; Gray's Restraints on Alienation, sec. 780. But the defendant contends that as Mrs. Lee signed the deed, and thereby agreed by the terms of her covenant not to alien her estate, and as plaintiff also signed the deed, and thereby assented to the covenant restraining Mrs. Lee from conveying away her estate, they are both now estopped to violate it, as they escaped a revocation of the limitations by Mrs. Smith during her lifetime by strictly adhering to the covenant, and should not be allowed to take advantage of her death after they have received the benefit of the gift and after the power of revocation is gone. This would enforce a restriction by estoppel, which the law declares void. The covenant was a "dead letter" when it was entered into, and we do not think it can be vitalized in this way. Because Mrs. Lee did not convey in the lifetime of her mother, and not until thirty years thereafter, is no reason why the parties should be estopped for not observing a void provision in the deed. If in the lifetime of her mother Mrs. Lee had aliened her estate, there is nothing to show that Mrs. Smith would not have assented thereto, notwithstanding the restraint. When Mrs. Smith died her power of revocation ceased, and the clause of restraint on alienation being void, there is nothing to prevent a conveyance by Mrs. Lee of her interest. We can discover none of the elements of an equitable estoppel in the case, and nothing more than the exercise of a legal right to part with her life estate in (725) the land. *Page 799 
The defendant's next contention is that plaintiff has only a contingent interest, as his estate is liable to go over before his death without issue and vest in Mrs. Lillian A. Springs, wife of R. C. Springs, the other donees, Anna B. Lee and W. Bernard Smith, having died without issue. But Mrs. Springs and her husband have conveyed their interest and estate to the plaintiff. This is admitted; but defendant attacks the deed upon the ground that it is void, as it conveys only a contingent remainder or a defeasible fee. This Court has frequently held that such an estate may be conveyed.Bodenhamer v. Welch, 89 N.C. 78; Wright v. Brown, 116 N.C. 26; Brown v.Dail, 117 N.C. 41; Kornegay v. Miller, 137 N.C. 659; Cheek v. Walker,138 N.C. 446; Beacom v. Amos, 161 N.C. 357; Hobgood v. Hobgood,169 N.C. 485; Scott v. Henderson, ibid., 660. We said in Kornegay v.Miller, supra, at p. 664: "It is true, as stated in the argument, that a possibility cannot be transferred at law. But by a possibility we mean such an interest or the chance of succession which an heir apparent has in his ancestor's estate. . . . But executory devises are not considered as mere possibilities, but as certain interests and estates. After citing Gurnellv. Wood, Willes, 211, and Jones v. Roe, 3 T. R., 93, in which may be found an interesting review of the cases, the learned judge says: `In the last case the judges seem to have considered it as settled that contingent interests, such as executory devises to persons who were certain, were assignable. They may be assigned, says Atherly, p. 555, both in real and personal estate, and by any mode of conveyance by which they might be transferred, had they been vested remainders.' It is true that the deed in that case was sustained upon other grounds, but the language used shows the opinion held by the learned and eminent judge who wrote for Ruffin, Gaston, and himself." And in Cheek v. Walker, supra, the Court held, as appears in the syllabus: "Where a father devised to his son (the plaintiff) certain property, and by a codicil provided if his son `dies unmarried or leaving no children' the property shall go to certain relatives: Held, that deeds executed by said relatives and by the children of such as were dead, conveying to the plaintiff `all the right which they now have or may hereafter have' in said property, vest in him an indefeasible title." And again: "Contingencies, which import a present interest of which the future enjoyment is contingent, are devisable and descendible, and may be the subject of release in certain cases, operating as an estoppel on the heirs and effectual as a valid conveyance." That would seem to be our case exactly, and there are others of those above cited which are strikingly similar in their facts. Mrs. Springs did not have a bare possibility, as assumed by defendant, but "a certain interest and estate," subject, it is true, to the happening of a contingent event, but nevertheless sufficiently certain, or rather *Page 800 
probable, to make it the subject of an assignment by a proper (726) instrument of conveyance. Unlike a bare possibility, as the heir's expectancy in his parent's estate, it does not depend upon the mere violation of any one, but is an interest which is fixed by the deed or will creating it, and which will finally vest in interest and possession if the event takes place.
The third position of defendant is that the legal title is outstanding. As to Mrs. Lee's life estate, so long as her husband lived, it was necessary that the trust for her separate use and maintenance should continue, as it was then active; but when her husband died, and the disability of coverture was removed, and there was no longer any necessity for a trustee to protect her interest, and as the trust then became passive, the statute executed the use and united the legal and equitable estates in her. Cameron v. Hicks, 141 N.C. 21; Perkins v. Brinkley,133 N.C. 154; Springs v. Hopkins, ante, 486. "Where the use is executed by the statute, the trustee takes no estate or interest, both the legal and equitable estates vesting in the cestui que trust; but where the use is not executed, the legal title passes to the trustee. The extent and quality of the estate taken by the trustee depends largely upon the purposes of the trust and the duties imposed thereby, as expressed in the terms of the instrument creating the trust, which the court will so far as possible construe to best effectuate the intention of the creator. The estate of the trustee is commensurate with the powers conferred by the trust and the purposes to be effectuated by it; or, in other words, the trustee takes exactly that quantity of interest, whatever it may be, which the purposes of the trust and its proper execution may require, and no more; and the purposes of the trust being executed, the trustee's estate ceases, the title passing by operation of law to the cestui que trust." 39 Cyc., 207.
As to the balance of the estate, viz., that given defeasibly to B. Rush Lee, and alternatively, upon his dying without issue, to Mrs. Lillian Springs, by way of shifting use or conditional limitation (Smith v.Brisson, 90 N.C. 284), there is no necessity that the legal estate originally vested in B.R. Smith, as trustee, should continue in him or his heirs, he having since died, because, as stated in Kornegay v. Miller,supra, and Beacom v. Amos, supra, the three estates, the life estate of Mrs. Lee, the estate given to B. Rush Lee in remainder, and the one limited over to Mrs. Springs, have all united in the plaintiff, and the original estate of the plaintiff and that of Mrs. Springs have thereby been divested of their contingent character. They have all, so to speak, merged in one and the same person, and no trust is required to preserve any contingent remainder, if such there was, before the conveyances were executed. 16 Cyc., 656. The estate given to the plaintiff by *Page 801 
the deed was a vested one — subject, it is true, to be divested upon the happening of the contingency, when the use will shift to Mrs. Springs; but nevertheless a vested one, as the conditional element (727) is not incorporated into the description of the gift to the remaindermen, but the interest is fully vested and a clause is added divesting it, which makes it a vested remainder. Starnes v. Hill,112 N.C. 1; Whitesides v. Cooper, 115 N.C. 570; 2 Minor's Institutes, 814. The statute executed this use, or transferred the seizin to the person having the use.
This is not the case of a trustee who is appointed to preserve contingent remainders, as we have shown. Mr. Perry, in his work on Trusts (5 Ed.), sec. 378, says: "Executory devises are a species of testamentary dispositions allowed by courts of law, and when properly exercised they pass the legal estate or interest to all persons in favor of whom the dispositions are made. They are devises to take effect at a certain time in the future, or upon a certain event, and in favor of certain persons. Limitations by way of springing or shifting uses are similar in effect, except that they are created by deeds inter vivos, and are based upon the statute of uses. Whenever the event happens when a shifting or springing use is to take effect, the statute of uses vests the legal seizin and ownership in the person entitled by virtue of the use."
We do not ignore rules of law in construing deeds and other instruments, where there is doubt as to the intention, and construction is necessary; but where the intention is clearly expressed, a rule of law will not be allowed to defeat it, and where technical language is used, we presume the intention to be as thus expressed and as the law construes it. Wilkins v.Norman, 139 N.C. 40. But in any view taken of the deed, the construction must be as we have stated it. It is said in 2 Washburn on Real Property (5 Ed), p. 678, marg. p. 294: "In one important respect the law as to future executory uses, answering to springing and shifting uses, varies from that relating to contingent remainders by the way of uses as it stood until the late statutory regulations upon the subject; and that is, as to the former being affected by the changes in or destruction of the estates which precede them. It is only necessary to repeat that, in case of a contingent remainder, by destroying that upon which it depends; but nothing which the owner of a prior limited estate, in the case of a springing or shifting use, can do can bar or affect the latter, since the second estate does not depend upon the first."
We do not see, therefore, that, under our procedure, the trustee was a necessary party to the suit for a reinvestment of the land upon the uses declared in the deed, as he had no real interest in it. Smith v. Moore,142 N.C. 277. The plaintiff and Mrs. Lillian A. Springs were parties, *Page 802 
and there were other heirs of Mrs. Nancy S. Smith, who were parties, and all vested and contingent interests were represented by some of the parties to the suit. This is said in addition to the fact that Mrs. (728) Springs has conveyed her interest to the plaintiff and the other limitations over have been defeated. Smith v. Moore, supra. The trustee had nothing to do but to hold the legal title, and when it became unnecessary to do this, or the trust ceased to be active, the statute executed the use, and he, therefore, had no interest in the suit. Smithv. Proctor, 139 N.C. 314; Gomez v. Gomez, 81 Hun, 566. It should further be said that the limitation over to the use of Mrs. Carrie E. Smith for life or widowhood, with remainder to the right heirs of the donor, has been defeated, as it was dependent upon an event which did not happen, viz., the death of both Lillian A. and W. Bernard Smith, in the lifetime of their father, W. Mc. Smith, and Lillian A. Smith, now Mrs. R. C. Springs, survived him. Smith v. Moore, supra.
We cannot adopt the suggested view that if Mrs. Springs should die at any time without issue the use would shift to the heirs of Mrs. Nancy S. Smith, Mrs. Carrie E. Smith, the life tenant, having died. The estate became absolute in Mrs. Springs upon her surviving her father, and this was the clear intention of the donor; otherwise she would have expressed her intention differently. Both the life estate of Mrs. Carrie E. Smith and the remainder in fee of the heirs were made dependent upon the death of Mrs. Springs in the lifetime of her father. There is no violation of the rule against perpetuities, as the dying of each party, B.R. Lee or Lillian A. Smith (Mrs. Springs) without issue, means, under our statute (Revisal, sec. 1581), a dying without having issue living at the time of her or his death.
We have found no error in the judgment of the court.
Affirmed.
Cited: Brooks v. Griffin, 177 N.C. 9 (1c, 2c); Norwood v. Crowder,177 N.C. 471 (1c, 2c); Pilley v. Sullivan, 182 N.C. 496 (1c, 2c); Bank v.Sternberger, 207 N.C. 819 (3c); Murdock v. Deal, 208 N.C. 756 (1c, 2c);Chinnis v. Cobb, 210 N.C. 108 (3c); Woody v. Cates, 213 N.C. 793 (6c);Williams v. McPherson, 216 N.C. 566 (1c); Fisher v. Fisher, 218 N.C. 48
(3c); Buckner v. Hawkins, 230 N.C. 101 (1c). *Page 803