Davis v. Davis, 2015 NCBC 95.

STATE OF NORTH CAROLINA

COUNTY OF DARE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 388

MELVIN L. DAVIS, JR. and J. REX DAVIS,
     Plaintiffs,

   v.

DOROTHY C. DAVIS and MKR
DEVELOPMENT, LLC, a Virginia Limited
Liability Company,
     Defendants.

)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER ON MOTIONS
FOR SUMMARY JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") and Defendant Dorothy C. Davis' Motion for Summary Judgment ("Mrs. Davis' Motion") (collectively, "Motions"), pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"). On August 19, 2015, the Court held a hearing on the Motions.

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, the record evidence filed by the parties, the arguments of counsel, and other appropriate matters of record, FINDS and CONCLUDES as stated herein.

> *Williams Mullen, by Camden R. Webb, Esq. and Elizabeth C. Stone, Esq., for Plaintiffs.*
> *Vandeventer Black LLP, by Norman W. Shearin, Esq. and Ashley P. Holmes, Esq., and LeClairRyan, by Thomas M. Wolf, Esq., for Defendants.*

McGuire, Judge.

<u>PROCEDURAL HISTORY</u>

1.   On July 23, 2013, Plaintiffs Melvin L. Davis, Jr. and J. Rex Davis commenced this action against Defendants by filing their Complaint in Dare County Superior Court. The

action was designated as civil action number 13 CVS 388 by the Clerk of Superior Court of Dare County. The Complaint sought a declaratory judgment finding that the language of the life estate granted to Defendant Dorothy Davis ("Mrs. Davis") by a certain North Carolina deed (the "Deed") prohibited her from renting a piece of real estate (the "Property") without the express permission of MKR Development, LLC ("MKR"). Plaintiffs also request that the Court permanently enjoin Mrs. Davis from renting the Property without the written approval of MKR.

2.     On November 21, 2014, the Court issued an Opinion and Order denying Mrs. Davis' Motion to Dismiss in Lieu of Answer pursuant to Rules 12(b)(1) and 12(b)(6). With respect to the 12(b)(1) challenge, the Court found that Plaintiffs had standing to pursue the action, as they successfully established their right to bring a derivative action on behalf of MKR. With respect to the 12(b)(6) challenge, the Court found that the Deed does not unambiguously grant Mrs. Davis the authority to rent the Property to third parties.

3.     On May 15, 2015, Mrs. Davis filed her Motion for Summary Judgment moving the Court for an order (1) granting summary judgment in her favor; (2) dismissing Plaintiffs' Complaint with prejudice; and (3) requiring Plaintiffs to pay Mrs. Davis reasonable expenses, including attorneys' fees incurred by her in the defense of this action.

4.     On May 18, 2015, Plaintiffs filed their Motion for Summary Judgment moving the Court for an order granting summary judgment in favor of Plaintiffs and declaring that the plain language of the Deed does not allow Mrs. Davis to rent the Property.

5.     Plaintiffs' Motion and Defendant's Motion have both been fully briefed and argued and are ripe for determination.

FACTUAL BACKGROUND

6.      Plaintiffs Melvin L. Davis, Jr. ("Mel Jr.") and J. Rex Davis ("Rex"), as well as Defendant Mrs. Davis, are citizens and residents of Virginia.[1] Plaintiffs are brothers, and Mrs. Davis is their mother.[2]

7.      In 1997, Plaintiffs and Kaye Davis ("Kaye"), their sister, formed nominal Defendant MKR for real estate investment and related activities.[3] The three siblings have equal interests in MKR and are the sole members and managers.[4]

8.      In the 1980s, Mrs. Davis and her husband, Melvin L. Davis, Sr., ("Mr. Davis") who is now deceased, purchased the Property, located in Dare County, North Carolina.[5]

9.      Prior to 2009, Mr. and Mrs. Davis rented the Property from time to time when they needed extra cash, and Southern Shores Realty managed the rental of the Property.[6] Plaintiffs, Kaye, and their brother Tommy were aware that Mr. and Mrs. Davis made the Property available to rent.[7]

10.      In January 2009, Mrs. Davis entered into an Exclusive Rental Management Agreement with Southern Shores Realty Services, Inc., to lease and manage the Property, and the agreement provided that the Property was available for rent starting on June 27, 2009.[8] Plaintiffs were aware that Mrs. Davis had entered into the agreement with Southern Shores Realty.[9] In 2009, the gross rental income on the Property that year was $21,595.00.[10]

---

[1] Compl. ¶¶ 3, 4, 6.
[2] *Id.* ¶¶ 7, 12.
[3] *Id.* ¶ 8.
[4] *Id.* ¶ 9.
[5] Mrs. Davis Dep. 9:16-25.
[6] *Id.* ¶¶ 9:2-11, 14:17-15:5, 45:21-46:1.
[7] *See* Rex Dep. 7:4-8:9; Kaye Dep. 18:19-17:2; Mrs. Davis Ans. to Interrogatory No. 3 at 5.
[8] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 8.
[9] *See* Mel Jr. Dep. 22:5-20, 23:12-15; Rex Dep. 29:16-30:7.
[10] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 10.

11. In 2009, Mr. and Mrs. Davis wanted to transfer the Property to each of their four children, but Mel Jr., Rex, and Kaye did not want to own the Property with Tommy.[11] Mr. and Mrs. Davis also wanted to satisfy certain financial obligations, including a promissory note associated with Tommy's personal residence for which they were primarily liable for approximately $270,000.[12] As a result, the Davis children came up with the idea of gifting the Property to MKR, and MKR would in turn pay Mr. and Mrs. Davis for Tommy's one-quarter interest in the Property.[13] This idea fulfilled Mr. and Mrs. Davis' intent to make a gift to their children and treat all four children equally.[14]

12. Mel Jr. retained Donald Stokes ("Stokes"), a Virginia attorney, about the appropriate structure of the transaction for tax and estate planning purposes.[15] Stokes drafted the Deed as to the Property, and MKR paid Stokes' bill related to the deed.[16]

13. On or about May 22, 2009, Mr. and Mrs. Davis executed the Deed.[17] The Deed states, in relevant part:

> The Grantors hereby reserve unto themselves, a life estate in the Property, said life estate to be personal to the use of the Grantors, or the survivor thereof, and may not be utilized by any other person, nor may it be reduced to a cash value for the benefit for the Grantors, or the survivor thereof, but must remain always during the lifetime of said Grantors, or the survivor thereof, available for their individual and personal use without interference from either the remaindermen or any other person.[18]

[11] Rex Dep. 13:3-16:8.
[12] Rex Dep. 14:18-15:20; Mel Jr. Dep. 40:23-41:5.
[13] Mel Jr. Dep. 40:23-42:25; Rex Dep. 15:21-16:8.
[14] *See* Rex Dep. 17:1-3; 20:22-25; Stokes Dep. 9:3-10, 13:6-15:4.
[15] Stokes Dep. 5:9-18.
[16] *Id.* 9:21-23, 15:25-16:2, 29:10-17; 86:10-16, 88:14-17, and 89:5-17.
[17] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 1.
[18] *Id.*

14.     Stokes used language in the Deed that "was more restrictive than would customarily be found in that type of a straight-forward deed of life estate and remainder."[19] He chose the language in the Deed for the following reasons:

> One, it was to protect [Mr. and Mrs. Davis] in their interest from creditors; and two, to ensure that their interest could not be reduced to a monetary amount. Because at their age and their life expectancy, if it had been done so, the amount of money that they would have received would have been far less than what the value of the occupancy of the properties that they were entitled to.[20]

15.     Stokes utilized the language in the Deed with the intention that it would prohibit Mr. and Mrs. Davis from renting out the Property during their life tenancy.[21] Stokes testified that he "read the documents and went over the documents with [Mr. and Mrs. Davis] before they signed them, with the consequences of what the language meant."[22] Stokes did not ascertain from Mr. and Mrs. Davis what their intentions were with respect to renting the Property after executing the Deed.[23] Stokes did not recall any conversations with Mr. and Mrs. Davis in which he discussed whether or not they would be able to rent the property after they executed the Deed.[24]

16.     In conjunction with the closing, MKR tendered $275,000 in cash and $250,000 in the form of a promissory note for the benefit of Mr. and Mrs. Davis.[25]

17.     Pursuant to the Deed, the word "Property" refers to the land and the house to which a remainder interest is conveyed, and the life estate in that Property cannot be reduced to a cash value.[26] Stokes conceded it is not the temporary use of the Property that cannot be

---

[19] Stokes Dep. 16:18-24.
[20] *Id.* 17:2-9.
[21] *Id.* 68: 21-25; 69:1-3.
[22] *Id.* 69:8-10.
[23] *Id.* 29:5-9.
[24] *Id.* 22:15-20.
[25] Pl.'s Mem. Mot. Summary Judgment Ex. D; Mel Jr. Dep. 16:10-19, 17:22-25.
[26] Stokes Dep. 21:7-16.

reduced to a cash value; instead, it is the life estate that cannot be reduced to a cash value.[27] Mrs. Davis was told that she could not sell the Property after the transfer to MKR.[28]

18.     Mr. and Mrs. Davis never discussed wanting to preclude themselves from renting the Property.[29] The Deed does not include any language that explicitly states that the life tenants are precluded from renting out the Property during the life tenancy.[30] Mr. and Mrs. Davis were in fact renting out the Property at the time they executed the Deed transferring the remainder interest.[31]

19.     Following the execution of the Deed, the Property was not rented by third parties in 2010, 2011, or 2012.[32]

20.     On July 17, 2012, Mr. Davis passed away, leaving Mrs. Davis as the sole life tenant of the Property.[33]

21.     On July 30, 2012, Plaintiffs, in their capacity of Member-Managers of MKR, wrote a letter to Mrs. Davis reminding her of the restrictions set forth in the Deed and cautioning her that the Property "must remain available for [her] personal use and may not be used to provide income to [her]."[34]

22.     In April 2013, Mrs. Davis entered into an Exclusive Rental Management Agreement with Outer Banks Blue, LLC ("Outer Banks Blue").[35]  The Rental Agreement gave Outer Banks Blue the authority to rent the property and further provided that: "Once a reservation (confirmed or otherwise) has been recorded in the computer system for the

---

[27] *Id.* 21:7-20.
[28] Mrs. Davis Dep. 37:21-24.
[29] Mel Jr. Dep. 20:16-22. Kaye Dep. 89:1-19.
[30] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 1.
[31] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 8.
[32] Kaye Dep. 17:19-18:7.
[33] Compl. ¶ 14.
[34] Pl.'s Mem. Mot. Summary Judgment Ex. H.
[35] Pl.'s Mem. Mot. Summary Judgment Ex. I.

company, Agent will not move guest. Owner understands they have no right to go upon the property during any rentals over the term of the management agreement."[36]

23.  In July 2013, Plaintiffs filed this declaratory judgment action claiming that the plain language of the Deed precludes Mrs. Davis from renting the Property.

DISCUSSION

24.  Pursuant to Rule 56, Mrs. Davis moves the Court to enter summary judgment in her favor and dismiss the Plaintiffs' Complaint with prejudice. Also pursuant to Rule 56, Plaintiffs move the Court to enter summary judgment in their favor and seek a declaratory judgment that the plain language of the Deed does not allow Mrs. Davis to rent the Property.

25.  In North Carolina, "summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Charlotte-Mecklenburg Hosp. Auth. v. Talford*, 366 N.C. 43, 47 (2012) (quoting Rule 56(c)). In considering a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party. *Fairfield Harbour Prop. Owners Assn. Inc., v. Midsouth Golf, LLC*, 215 N.C. App. 66, 74 (2011). "The moving party bears the burden of establishing that there is no genuine issue of material fact." *Id.* (citing *Dalton v. Camp*, 353 N.C. 647, 651 (2001)). The moving party also bears "the burden of clearly establishing lack of a triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011) (quoting *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310 (1976)). To be entitled to summary judgment, the moving party must show that "there are no gaps in his proof; that no inferences inconsistent with his recovery arise

---

[36] *Id.* at 3.

from his evidence; and that there is no standard that must be applied to the facts by the jury." *Charlotte-Mecklenburg Hosp. Auth.*, 366 N.C. at 47.

26.     Mrs. Davis primarily asserts that the Deed at issue contains restrictive language which constitutes an unlimited restraint on alienation of her life estate in the Property in violation of public policy and that the Deed is therefore void. Plaintiffs, however, contend that the Deed is not void as against public policy where Mr. and Mrs. Davis, the grantors, reserved a life estate in themselves and voluntarily restricted their own ability to convey the Property. While the parties dispute the extent to which the clauses of the Deed at issue restrict Mrs. Davis' use of or the ability to convey the life estate, neither disputes that the Deed contains restrictions on Mrs. Davis' interest in the life estate. Because the legal concept of restraints on life estates will affect the Court's analysis, the Court will begin by analyzing the law of this concept.

27.     "[A] life estate is an estate in land, vesting the holder with the right to use and possess the property during his lifetime." *Brinkley v. Day*, 88 N.C. App. 101, 103 (1987). "[A] life tenant owes certain duties to the remaindermen regarding payment for taxes and insurance and the prevention of waste." *Id.* at 105 (citing *Thompson v. Watkins*, 285 N.C. 616, 620 (1947) ("The life tenant has the obligation to list and pay the taxes on the property.")).

28.     An unlimited restraint on alienation of a life estate is against public policy, and therefore, void. *See, e.g., Pilley v. Sullivan*, 182 N.C. 493, 496 (1921) ("The clause which purports to ingraft upon the devise an unlimited restraint on alienation is not only repugnant to the estate devised, but is in contravention of public policy, and therefore void."); *Lee v. Oates*, 171 N.C. 717, 721 (1916) ("[T]his Court has for many years consistently held that the doctrine as to restraints on alienation applies as well to estates for life as to estates in fee simple, and to equitable estates as well as to legal estates."); *Wool v. Fleetwood*, 136 N.C. 460

(1904) (holding that a provision in a will prohibiting the life tenant from selling the life estate was void); *Wachovia Bank & Trust Co. v. John Thomasson Constr. Co.*, 3 N.C. App. 157, 162 (1968) ("Prohibitions against alienation imposed by the transferor of legal and equitable fees and legal life estates upon the transferee are held by the common law to be invalid as against public policy.").

29.     The underlying principle behind the prohibition of direct restraints on alienation is that it is necessary to maintain a society controlled primarily by its living members and facilitate the utilization of wealth. *Smith v. Mitchell,* 301 N.C. 58, 62 (1980) (citing 4 *Restatement of the Law of Property, Introductory Note to Part II* at p. 2379 (1944)). This principle favoring alienability, however, conflicts with another common law tenet—that one who has an interest in property should be able to convey that interest subject to whatever condition he or she desires to impose on the conveyance. *Id.* (citing 4 *Restatement of the Law of Property, Introductory Note, supra* at p. 2380). Faced with this conflict, the law has developed so that "some direct restraints on alienation are permissible where the goal justifies the limit on the freedom to alienate or where the interference with alienation in a particular case is so negligible that the major policies furthered by freedom of alienation are not materially hampered." *Id.* (citing 4 *Restatement of the Law of Property, Introductory Note, supra* at p. 2380).

> Thus the general rule is that a restraint on alienation which provides that the property cannot be alienated, a disabling restraint, is *per se* invalid, while restraints which provide only that someone's estate may be forfeited or be terminated if he alienates, or that provides damages must be paid if he alienates, may be upheld if reasonable.

*Id.* (citations omitted).  In accordance, North Carolina has recognized some limited restraints on alienation of life estates as being permissible. *Id.* (recognizing indirect restraints on conveyance of a fee subject to a possibility of reverter or to a condition subsequent).

30.     In this case, Plaintiffs do not argue that there is anything limited about the restraint on Mrs. Davis' right to alienate her life estate. To the contrary, they contend that not only is she prohibited from selling the life estate, she cannot rent or even permit others to use the Property. Instead, Plaintiffs' primary argument is that since Mrs. Davis is both the grantor and the life tenant and imposed the restrictions upon her own use of the life estate, the restriction in the Deed does not implicate the public policy reasons underlying the prohibition on restrictions on alienation. Plaintiffs have not cited to precedent from North Carolina or any other jurisdiction that recognizes such a distinction between a life estate granted to a third party versus one reserved by a grantor.

31.     Mrs. Davis' relies on *Lee v. Oates* in which the Supreme Court of North Carolina examined restrictions placed on the conveyance of property by the grantor to her son, subject to a life estate in a third party. 171 N.C. at 717. In *Lee*, the deed included a prohibition against alienation of the life estate that was expressly agreed to by the life tenant. The defendant argued that because the life tenant and plaintiff both signed the deed and assented to the covenant restraining the life tenant from conveying away her estate, the life tenant and plaintiff were estopped from violating the provision in the deed. *Id.* at 724. However, the court disagreed, finding that "[t]he covenant was a 'dead letter' when it was entered into," and it could not be vitalized just because the plaintiff and life tenant agreed to sign the deed with the restriction. *Id.*

32.     Plaintiffs contend that the instant case is distinguishable from *Lee* for the following reasons. First, the Deed here did not *convey* a life estate to Mr. and Mrs. Davis, but *reserved* a life estate in their favor. Second, Mr. and Mrs. Davis did not seek to impose a restriction on a third party's ability to convey or use the property but, rather, voluntarily restricted *their own* interest in the Property. The Court is not persuaded, however, that Plaintiffs' contentions are relevant to its analysis, as first and foremost the Court must

analyze whether the restrictions in the Deed constitute a disabling restraint on alienation that is *per se* void.

33. Here, the Deed provides that the life estate "may not be utilized by any other person, nor may it be reduced to a cash value."[37] Instead, the life estate must always remain "available for [Mr. and Mrs. Davis'] individual and personal use without interference from either the remaindermen or any other person."[38] Together, these provisions prohibit Mrs. Davis from transferring her interest in the life estate under any circumstance. The language of the Deed does not provide only that Mrs. Davis' life estate may be forfeited or be terminated if she alienates or that damages must be paid if she alienates. Accordingly, the provisions constitute a disabling restraint on alienation of the life estate, rather than a forfeiture or promissory restraint. *Smith*, 301 N.C. at 62. Thus, at the time Mr. and Mrs. Davis executed the Deed, the disabling restraint found in the Deed was a "dead letter" and *per se* invalid. *Lee*, 171 N.C. at 724; *Smith*, 301 N.C. at 62. To hold such a restraint on alienation as valid simply because Mr. and Mrs. Davis knowingly or voluntarily assented to signing the Deed containing those provisions "would enforce a restriction by estoppel which the law declares void." *Lee*, 171 N.C. at 724.

34. The Court concludes that the provisions in the Deed stating that the life estate "may not be utilized by any other person, nor may it be reduced to a cash value," and must always remain "available for [Mr. and Mrs. Davis'] individual and personal use without interference from either the remaindermen or any other person" create a disabling restraint

---

[37] Def.'s Mem. Opp. to Pl.'s Mot. Summary Judgment Ex. 1.
[38] *Id.*

on the alienation of Mrs. Davis' life estate, which is against public policy; thus, such provisions found in the Deed are void.[39]

35.    As the Court holds the aforementioned Deed provisions invalid, the Deed's remaining language is in direct conflict with Plaintiffs' claim that Mrs. Davis cannot rent the Property to third parties without MKR's consent. Plaintiffs do not contend that any other language contained in the Deed would prohibit Mrs. Davis from renting the Property, and moreover, absent the aforementioned provisions, there is no remaining language in the Deed that can be construed to preclude Mrs. Davis from renting the Property. Accordingly, Mrs. Davis is entitled to summary judgment on Plaintiffs' claims.

THEREFORE, IT IS ORDERED, based upon the foregoing FINDINGS and CONCLUSIONS that:

36.    Mrs. Davis' Motion for Summary Judgment is GRANTED, and the Plaintiffs' Complaint dimissed.

37.    Plaintiffs' Motion for Summary Judgment is DENIED.

This the 21st day of October, 2015.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases

---

[39] While the Court holds these provisions in the Deed invalid, it does not hold the remaining language of the Deed invalid. Accordingly, Mrs. Davis still has a life estate interest in the Property and Plaintiffs have a remainder interest.