WACHOVIA BANK AND TRUST COMPANY, TRUSTEE, AND THE ALEX-
ANDER CHILDREN'S CENTER, A CHARITABLE CORPORATION, v. JOHN
THOMASSON CONSTRUCTION CO., INC., A CORPORATION

No. 6826SC420

(Filed 11 December 1968)

**1. Trusts § 4; Deeds § 12— charitable trust — restraint upon alienation**

A conveyance in remainder of realty to a trustee "to hold said land forever for the sole use and benefit" of a named charity, the trustee to have no power to sell or convey the land either with or without the consent of the charity, vests in the trustee upon the death of the life tenant a title in fee simple absolute for the use of the charity, since the restraint upon alienation imposed by the transferor is void as a matter of public policy.

**2. Trusts § 4— charitable trust — equitable jurisdiction of court to order sale of trust property**

Courts of equity have jurisdiction to order, and in proper cases do order, the alienation of property devised for charitable uses, and such power is frequently exercised where change in conditions make the alienation of the property, in whole or in part, necessary or beneficial to the administration of the charity.

**3. Trusts § 4— charitable trust — sale of trust property — restraint on alienation**

In trustee's action to determine its right to convey a fee simple title to property which it holds in trust for benefit of a charity under trust indenture providing that trustee is to hold the property forever with no power of alienation, trial court properly exercised its equitable jurisdiction to permit the sale of the property where there was evidence that (1) the property, consisting of some 450 acres, was a thriving dairy farm at the time the trustee acquired the property but is no longer productive and is lying idle, (2) the property has a value in excess of one million dollars but does not produce income sufficient to pay ad valorem taxes, which amounted to $2367 in a recent year, and (3) the charity does not have funds to pay the taxes.

APPEAL by defendant from *Hasty, J.,* 3 September 1968, Criminal Session, MECKLENBURG County Superior Court.

The plaintiff, The Alexander Children's Center (Alexander), is a non-profit corporation which was organized as "The Alexander Home of Charlotte, North Carolina", pursuant to Chapter 225 of the 1903 Private Laws of North Carolina, entitled "An Act to Incorporate The Alexander Home of Charlotte, North Carolina". For many years this institution engaged in custodial care for orphan children. However, it was determined that the youth of the community could best be served by promoting in-patient care for emotionally disturbed children. Therefore, the institution's name was

changed in 1963. Such in-patient care was adopted as its purpose, and that is its present activity.

By deed dated 17 October 1930, duly recorded in the Mecklenburg County Public Registry, E. T. Garsed conveyed certain lands to the Charlotte National Bank (Charlotte) as trustee for the benefit of Alexander. Wachovia Bank and Trust Company (Wachovia), a banking institution organized and doing business under the laws of the State of North Carolina, is the corporate successor of Charlotte.

This deed provided that Garsed "has bargained, sold and conveyed, and by these presents does bargain, grant, sell and convey unto (Charlotte) at the expiration of the natural life of (Garsed) the remainder in and to the hereinafter described tract of land upon the following trust:

> To hold said land forever for the sole use and benefit of the Alexander Home, a corporation organized under Chap. 225 of the Private Laws of North Carolina, of the year 1903, and to that end to take charge of, manage, rent and have general control of said tract of land and to turn over the net revenue derived therefrom to the proper officers of the said Alexander Home, annually, or more often if it be practicable to do so. The said party of the second part may use such part of the income that may be derived from said estate as may be necessary to keep said premises in repair, but shall use no part of said income in permanent improvements without the consent of the Alexander Home.

> The party of the second part shall have power to lease any part of said land and for such term of years as it sees fit; provided, however, that no lease of any part of said land for a period longer than five years shall be made without the consent of the said Alexander Home. Provided further, that after the death of the party of the first part, said lands shall be held forever for the above set out trust, and that the party of the second part shall have no power to sell or convey the same either with or without the consent of the Alexander Home, said tract of land . . . (here follows a description)

> To HAVE AND To HOLD the remainder, at the expiration of the natural life of the said party of the first part, of the said tract unto the Charlotte National Bank, its successors and assigns forever, upon the uses and trusts above set out."

On 12 October 1967 plaintiffs and defendant entered into an agreement whereby plaintiffs agreed to sell and defendant agreed

to buy approximately ten acres of the Garsed land for the sum of approximately $30,000. Thereafter, by letter dated 7 December 1967, defendant refused to accept the deed to the property or pay the purchase price, alleging that plaintiffs could not convey a valid fee simple title to the property.

The plaintiffs instituted this action to determine whether they have the right to convey a fee simple title to the Garsed property and to require the defendant to perform the terms of the purchase contract.

For their first cause of action, the plaintiffs assert that the restriction in the Garsed deed is void as a matter of law because it purports to restrain the alienation of land in perpetuity. For their second cause of action, they assert that changed conditions will cause the trust to fail and the primary purpose of the grantor to be frustrated unless the court exercises its equitable jurisdiction to permit sales of the Garsed property.

The plaintiffs introduced evidence showing the background of Alexander, including its original location on East Boulevard in the City of Charlotte, the change in conditions necessitating a move from that location, and the re-establishment of the institution on a tract of some thirty acres of the Garsed property. This evidence further shows that the Garsed property consisted of some 450 acres; that the property was a thriving dairy farm at the time of the death of Garsed and the acquisition of the property by the trustee; that due to the growth of Charlotte and other changes, the property is no longer productive; that the property has a value in excess of one million dollars; but that in its present state, it does not produce enough income to pay taxes. "The ad valorem property taxes on the property for 1967 amounted to $2,367.79. They are unpaid and we do not have the funds to pay them. The annual income of the property is nowhere near enough to pay the taxes on it."

An assistant trust officer of Wachovia testified:

"Needless to say, if the land not now necessary to the purposes of The Alexander Children's Center could be sold and the proceeds held in trust and invested, this trust would produce a very substantial annual income for the use of the beneficiary. As matters stand, the trust is actually running an annual deficit because the value of the land and the ad valorem taxes have gone up while the income has gone down.

When this trust was created the land in question was a thriving dairy with adjoining woodland and pasture land a number of

miles from the city limits of Charlotte. It was producing income and there was no reason to think that it would not continue to do so. The unprecedented and then unforeseen growth of the City of Charlotte right up to the boundaries of this property, together with the drastic change in economic conditions and more particularly in the dairying industry have rendered the land unproductive for any purposes springing from the use of the land itself that would be compatible with the presence of the Center on part of the land. At the same time the land has become highly desirable for residential purposes. The Alexander Children's Center has now moved its facilities to a part of the property. Single-family residential development of the quality that the prospective purchaser intends to place on the land will serve to insulate the Center against the kind of encroachment of undesirable adjoining land use that forced it to move from its former location, while at the same time giving the Center a substantial income from the remainder of the property, something which, along with the providing of a future site for the location of the Center, was one of the expressed intentions of the donors of the property."

The trial court under date of 19 September 1968 entered a judgment to the effect that on the first cause of action the restriction constituted an illegal restraint on alienation and was void.

On the second cause of action, the trial court found that the facilities of Alexander located on East Boulevard in the City of Charlotte became outdated and inadequate and the surrounding neighborhood changed to such an extent that it was necessary for Alexander to relocate; that it did so on a portion of the Garsed lands; that the major portion of the Garsed lands are unoccupied and lying idle; that the greater portion of the lands are not needed for the operation of Alexander; that at the time of the original gift the land was used for a thriving dairy which has now gone out of existence; that there has been a substantial change of conditions unforeseen by Garsed; that as a result of these unforeseen changes of conditions, the original intent of Garsed is being thwarted and the ability of Alexander to carry out the intentions of Garsed are being materially impaired by a lack of operating income funds for capital improvements; that it is necessary and in the best interests of Alexander that the administrative provisions of the trust be amended so that a portion of the property in question can be sold and the proceeds of the sale held in trust and invested so as to produce income to allow for the full development and utilization of that part of the property which Alexander desires to retain for its own

use; that it is only by doing this, that the intention of Garsed can be fully realized; that the entire property is of such size and nature that it cannot be economically sold as one parcel; that it is highly desirable that the property in close vicinity to the facilities of Alexander be utilized for residential purposes; that it is not economically feasible to use leased land for residential purposes; and that the only practical way to accomplish the purposes for which Alexander exists is to sell the land in question in marketable parcels under the supervision of the court.

The trial court then found that it was necessary and in the best interests of Alexander that portions of the 450 acre tract, not necessary for the purposes of Alexander, be sold and the proceeds invested in order that the land retained may be developed and utilized to carry out the purposes of the trust.

The trial court concluded that ". . . in the exercise of its inherent equitable power to supervise the administration of charitable trusts (the court) ought to allow and require the conveyance of the land which is the subject of this suit."

The trial court ordered that the terms of the purchase contract be carried out by the parties and ". . . that this cause be retained on the docket of this Court so that the Court may from time to time consider upon motion the sale by the plaintiffs of land under the additional options heretofore granted to the defendant and of such additional parcels of land as they may from time to time desire to be allowed to convey."

The defendant excepted to the findings of fact and conclusions of law and appealed.

*Helms, Mulliss & Johnston by E. Osborne Ayscue, Jr., Attorneys for plaintiff appellees.*

*James O. Cobb, Attorney for defendant appellant.*

Campbell, J.

[1]   The defendant presents two questions for consideration: (1) Did the trial court commit error in holding that the restriction in the Garsed deed was void as against public policy? (2) Did the trial court commit error in holding that, under the facts and circumstances in the record, equitable jurisdiction could be exercised in order to permit the sale of a portion of the real property?

"There can not be a co-existence of a fee-simple estate and a total restriction upon its alienation during any period of time,

however short it may be. One person can not own the fee and another person the right of alienation." *Latimer v. Waddell,* 119 N.C. 370, 26 S.E. 122.

This principle was applied to a charitable trust in *Hass v. Hass,* 195 N.C. 734, 143 S.E. 541, where the Supreme Court stated:

"The second sentence in Item 2 of said will, to wit: 'It is my will that my real estate be not sold, but that the rents and profits for ninety-nine years be paid to the authorities aforesaid for the blind children as aforesaid,' if construed as an attempt to restrain the alienation of the real estate, devised in fee to the defendant, the State School for the Blind and Deaf, is of no legal effect and is void in law."

Prohibitions against alienation imposed by the transferor of legal and equitable fees and legal life estates upon the transferee are held by the common law to be invalid as against public policy. Bogert, Trust and Trustees, 2d Edition, § 349. While some authorities hold that this common law rule does not apply to a prohibition against the transfer of trust property by a trustee for a charity, there are many authorities to the contrary. *Hass v. Hass, supra,* is cited by Bogert as placing North Carolina among those authorities to the contrary. Bogert points out that courts, which hold that this common law rule is inapplicable to a trustee's power of sale, may have been influenced by the rule that charitable trusts may be perpetual and that inalienability of the trust property would, therefore, follow as a practical matter. However, he further points out that "[i]f the restraint on the trustees is regarded as illegal, the effect is to leave the trust in force without any restriction. The trust does not fall. The restriction alone is declared void." Bogert, *supra.*

We conclude that the trial court was correct in holding that the trustee took title in fee simple absolute upon the death of the life tenant without restraint or restriction on the power of alienability.

[2]    The second question may also be answered in the negative.

". . . [C]ourts of equity have jurisdiction to order, and in proper cases do order, the alienation of property devised for charitable uses. . . . The power is not infrequently exercised where conditions change and circumstances arise which make the alienation of the property, in whole or in part, necessary or beneficial to the administration of the charity. . . . [C]ourts of equity have long exercised the jurisdiction to sell property devised for charitable uses, where, on account of changed condi-

tions, the charity would fail or its usefulness would be materially impaired without a sale." *Holton v. Elliott,* 193 N.C. 708, 138 S.E. 3.

**[3]**   Alexander will not cease to exist if the contract in this instance is not performed. However, nonperformance would materially impair the usefulness of Alexander as a charitable institution since the property in question is now unproductive and idle and since the present and future needs of Alexander do not necessitate retention. The property in question is not self-sustaining and does not produce enough income to pay ad valorem taxes. If the taxes are not paid, the property could be lost unless other funds of Alexander are used for the payment of these taxes. Without question, the grantor did not foresee thirty-eight years ago the discontinuance of the dairy farm or the growth in population and territory of Charlotte. The chief object of the grantor's bounty was to increase the effectiveness of the charities being performed by Alexander for the children in the territory served by Alexander. The proposed sale and the judgment of the trial court will carry out the primary purpose of the grantor. The evidence supports the findings of fact and the findings of fact in this case support the judgment entered.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.